EDWARDS ET AL. *v.* HOUSING AUTHORITY OF THE CITY OF MUNCIE ET AL.

[No. 27,105. Filed March 13, 1939.]

*William H. Bales,* for appellants.
*Corbett McClellan, W. A. McClellan, L. L. Bracken,*

*Harry V. Forehand, Everet E. McDaniels, Z. Jay Stanley,* and *Matthew E. Welsh,* for appellees.

FANSLER, J.—This is an action by the appellants, taxpayers and property owners of the city of Muncie and Delaware County, seeking to enjoin the Housing Authority of the city of Muncie and of Delaware County, and the officers of those municipalities, from operating under chapters 81, 207, and 209 of the Acts of 1937 (Acts 1937, pp. 433, 1034, 1058), upon the theory that those acts, constituting one body of law providing for slum clearance and public housing, are unconstitutional. The complaint seems to have been drawn for the purpose of questioning every provision of the acts in question and raising every conceivable constitutional objection thereto. Demurrers were sustained, and error is predicated upon the ruling.

The purposes of the acts in question, as indicated by their titles, are to provide for public bodies corporate, to be known as housing authorities, to undertake slum clearance and provide dwelling accommodations for persons of low income; to define their powers and duties, which include the acquisition of property, borrowing money, issuing bonds and other obligations; to authorize municipal corporations to give aid to the projects or similar agencies of the United States, by furnishing the usual public service facilities; and to authorize municipalities to contract with respect to the services and facilities to be provided; and requiring municipalities to make appropriations for the first year's administrative expenses of such authorities; and to exempt the property and bonds of such bodies corporate from taxation. It is declared in the acts: "(a) That there exists in the State housing conditions which constitute a menace to the health, safety, morals and welfare of the residents of the State; (b) that these conditions necessitate excessive and disproportionate expenditures of public funds for crime

prevention and punishment, public health and safety, fire and accident prevention, and other public services and facilities; (c) that the public interest requires the remedying of these conditions by the creation of housing authorities to undertake projects for slum clearance and for providing safe and sanitary dwelling accommodations for persons who lack sufficient income to enable them to live in decent, safe and sanitary dwellings without overcrowding; and (d) that such housing projects are for public uses and purposes and are governmental functions of State concern. As a matter of legislative determination, it is hereby found and declared that the property and bonds of a housing authority are property and bonds of a public corporation and of such character as to be exempt from taxation." (Chapter 81, section 1, p. 434.) And: "(b) That there exists now and may exist at divers times in the future, conditions, due to floods, tornadoes, fires and other disasters beyond human control, which demand the re-planning and re-building of housing areas; (c) That these slum areas have not been cleared, nor can the shortage of safe and sanitary dwellings for persons of low income be relieved, through the ordinary operations of private enterprise, and that the construction of housing projects for persons of low income (as herein defined) would therefore not be competitive with ordinary operation of private enterprise; (d) That the clearance, re-planning and reconstruction of the areas in which insanitary or unsafe housing conditions exist and the providing of safe and sanitary dwelling accommodations for persons of low income are public uses and purposes for which public money may be spent and private property acquired; that it is in the public interest that work on such projects be commenced as soon as possible in order to relieve unemployment which now constitutes an emergency; and the necessity in the public interest and welfare for the provisions hereinafter

enacted, is hereby declared a matter of legislative determination." (Chapter 207, section 2, p. 1035.) And again: "It is hereby found and declared that the assistance herein provided for the remedying of the conditions set forth in the Housing Authorities Law constitutes a public use and purpose and an essential governmental function for which public moneys may be spent, and other aid given; that it is a proper public purpose for any state public body to aid any housing authority operating within its boundaries or jurisdiction or any housing project located therein; as the state public body derives immediate benefits and advantages from such an authority or project; and that the provisions hereinafter enacted are necessary in the public interest." (Chapter 209, section 2, p. 1059.)

That the legislature has power to protect public health, safety, morals, and welfare, and to exercise and to authorize the exercising of the power of taxation and eminent domain, and the raising and expenditure of public funds for such purposes, cannot be doubted. From time to time boards and commissions have been created and authorized and vested with authority to carry out projects for the protection of the public. The name given to such an instrumentality is of no significance, nor do we find any limit upon the character or number of public corporations or bodies politic, which the legislature may authorize or create to accomplish such purposes. The facts found by the legislature and recited in the enactments are not disputed, or their existence denied, and, since the conditions described must be assumed to exist and to affect the public welfare, it can scarcely be doubted that there is a public interest which justifies the undertaking of the projects authorized by the enactments. The various housing authorities are not authorized to levy taxes, but municipalities are authorized to pay the first year's adminis-

trative expenses of these projects, and to furnish, and to contract to continue to furnish, certain facilities, such as streets, sanitary service, police and fire protection, street lighting, etc., which, if not necessary, are at least useful and convenient in accomplishing the principal purpose of the projects, which is to replace unsanitary, unsafe, and unhealthy dwellings which are a menace to the community. If such dwellings are a menace to the public, and their replacement necessary for the protection of the public, there is a sufficient basis for the expenditure of public funds. The amount, and manner, and method of the expenditure, unless it be shown to be entirely unreasonable, must be left to the legislative discretion.

There is no private profit involved in these enterprises. The properties to be acquired and constructed will belong to the public, and, since their purpose is a public one, the authorities may be legally invested with the power of eminent domain. There is ample precedent in the condemnation of property for drains, levees, hospitals, parks, highways, and other public purposes, to say nothing of the exercise of that power by private corporations where there is merely a public interest, as in the case of public utilities.

It is contended that the act is unconstitutional in that it attempts to grant to a class of citizens privileges or immunities which, upon the same terms, do not equally belong to all citizens; that, since the properties of the housing authorities are to be exempted from taxation, and are to be furnished for a rental sufficient only to pay costs without profit, the tax exemption inures directly to the benefit of the tenants, and that they as a class are receiving a benefit which is not enjoyed by the public generally. But the same character of private benefit is found in connection with all public, charitable, or quasi-charitable enterprises. The right to se-

cure the benefits of such projects for the public generally cannot be denied because incidental special benefits may accrue to some individuals.

It is contended that the property and bonds involved may not lawfully be exempted from taxation. This contention is based upon the theory that they are private enterprises, but they are not. They are as public in character as drainage, levee, sanitary, or highway projects, the property and bonds of which are properly exempted from taxation.

It is contended that the provision of the act, which authorizes housing authorities to issue bonds secured by mortgage upon the housing projects without limitation as to the value of the taxable property within the housing authority, contravenes section 1 of article 13 of the Constitution of Indiana, which prohibits political or municipal corporations from becoming indebted in an amount in excess of 2 per cent of the taxable property within the corporation. By the provision of the act the bonds authorized do not become the debt of any city, town, or county, the state, or any political subdivision thereof. They are not payable out of taxes or any funds or properties other than the funds and properties of the housing authority issuing them. The situation seems identical with that involved in the case of *Fox* v. *City of Bicknell et al.* (1923), 193 Ind. 537, 540, 541, 141 N. E. 222, 223. In that case the city of Bicknell was proceeding under an act which authorized it to acquire a water plant and to mortgage the plant and pledge the funds derived from its operation to the payment of bonds. In holding that the issuing of such bonds does not violate the constitutional provision, the court said: "The city of Bicknell is not agreeing to pay any money raised by taxation, and is not pledging or mortgaging any property that it already has; nor is it pledging income or revenues from any source except the plant.

Hence, there is no legal or moral obligation on the part of the city to pay, its only duty being to manage the plant and take care of the funds." The purpose of the constitutional provision is to limit the public indebtedness, which would be a burden upon the public and payable out of taxes or by the sale of public property. The project here authorized contemplates a benefit to the public without any expenditure of public funds other than those incidental amounts involved in the first year's administrative expenses of the authority and in furnishing the usual highway, sanitary, and policing services to the territory within the authority. But such expenses are current expenses, payable currently. The property of the housing authority is acquired with the funds raised by the bond issue and other contributions without cost to the public, the state, or any body politic, and at most the bondholders may take back the property or income from the property which they have provided. The scheme in nowise involves an evasion of the spirit or purpose of the constitutional provision.

It is contended that the taking effect of the act is made to depend upon the declaration by the governing body of a city, town, or county that there is need for a housing authority to function in such city, town, or county, and that therefore the law is in contravention of section 25 of article 1 of the Constitution of Indiana, which provides that no law shall be passed, the taking effect of which shall depend upon any authority, except as provided in the Constitution. There is an emergency clause in the acts, by the terms of which they went into force immediately upon their passage, so that their taking effect was not made to depend upon the action of any other body. It is true that the question of whether or not a particular community will avail itself of the provisions of the act is made to depend upon the determination of that question by local authority. But

that is true under statutes authorizing the construction of highways or hospitals, and in many other cases which will readily suggest themselves. The law is not unconstitutional in this respect. *Johnson et al.* v. *Board of Park Com'rs of Fort Wayne et al.* (1930), 202 Ind. 282, 174 N. E. 91.

It is asserted that the act violates section 1 of article 4 of the Constitution of Indiana by delegating legislative authority to the housing authorities. Appellants say that the act does not sufficiently define the class of persons permitted to occupy the housing accommodations provided for, nor set up sufficient rules or standards in the selection of those entitled to live in the establishments to be constructed. It is provided that, in renting and selecting tenants, the authority "shall not accept any person as a tenant in any dwelling in a housing project if the persons who would occupy the dwelling have an aggregate annual income which equals or exceeds the amount which the authority determines (which determination shall be conclusive) to be necessary in order to enable such persons to secure safe, sanitary and uncongested dwelling accommodations within the area of operation of the authority and to provide an adequate standard of living for themselves. (b) It may rent or lease the dwelling accommodations therein only at rentals within the financial reach of persons who lack the amount of income which it determines [pursuant to (a) of this section] to be necessary in order to obtain safe, sanitary and uncongested dwelling accommodations within the area of operation of the authority and to provide an adequate standard of living." The law is complete in itself. The legislature cannot delegate the power to make a law, but it can make a law and delegate power to determine the existence of some fact or situation upon which the law is intended to operate. The overseer of the poor

selects the objects of the public bounty; local officers determine who shall be admitted to poorhouses and public hospitals. It is obvious that the legislature could not itself select the tenants in these public projects, nor could it accomplish its purpose by fixing arbitrary income limits, since income requirements necessarily vary in different communities. Laws have been upheld which delegate power to adopt rules to prevent outbreaks in the spread of contagious diseases, and regulating minimum standards of food and drugs, to determine and fix reasonable rates to be charged by public utilities, to determine the price of milk, etc. We believe that the act provides sufficient standards and rules for the determination of the facts, and that it is not unconstitutional in this respect. See *Blue* v. *Beach et al.* (1900), 155 Ind. 121, 56 N. E. 89; *Isenhour* v. *State* (1901), 157 Ind. 517, 62 N. E. 40; *Arnett, Controller* v. *State ex rel. Donohue* (1907), 168 Ind. 180, 80 N. E. 153; *Southern Indiana Railway Co. et al.* v. *Railroad Commission of Indiana* (1909), 172 Ind. 113, 87 N. E. 966; and *Albert et al.* v. *Milk Control Board of Indiana* (1936), 210 Ind. 283, 200 N. E. 688.

It is argued that the act is invalid in that it is an attempt on the part of both the General Assembly and the city of Muncie to surrender and alienate police and governmental power. It is conceded that many of the things which the city may contract to do under the act have to do with the exercise of police and governmental powers, but both the city and the housing authority are public corporations, to which the legislature may delegate governmental and police power, and therefore, in making agreements, they simply exercise a power expressly delegated to them as bodies politic. Neither the city nor the housing authority acquired any vested right to exercise governmental or police powers, and the legislature may withdraw the power at any time,

notwithstanding the contract. The city of Muncie merely agrees with the other body corporate that it will exercise certain powers, which it now holds with respect to certain matters, in co-operation with, and in aid of, the housing authority in the accomplishment of the public purpose contemplated by the legislation in question. It is as though a civil city agreed with the school city to furnish police, fire, and sanitary services in school or playground territory, or agreed with a park board to furnish such services in connection with public parks. No reason is seen why it may not be done if the legislature authorizes it as it has done here; and no authority to the contrary is called to our attention.

Finally it is urged that subdivision (g) of section 3 of the Housing Authorities Act is invalid in that it attempts to vest two independent public corporations with the same or like powers within the same territory.

The section provides that the housing authority of a city shall include such city and the area within five miles thereof, excluding territory within the boundaries of another city or town, and that the county territory shall include all of the county except that portion which lies within a city or town. The appellants rely upon certain statements in *Taylor et al.* v. *City of Fort Wayne et al.* (1874), 47 Ind. 274, and *Strosser* v. *City of Fort Wayne* (1885), 100 Ind. 443, to the effect that there cannot be two corporations for the same purpose with co-extensive powers of government extending over the same district. It is true that such a situation could create intolerable confusion, but there is no such situation here. Normally the county government has jurisdiction outside of the area of incorporated cities and towns in respect to certain matters, but the city has power to annex additional territory, which, for governmental purposes within the scope of the authority of the city, is removed from the jurisdiction of the county. It may have been

the legislative intention that either a county or a city housing authority might assume jurisdiction to act in respect to territory outside of the area of cities, but adjacent thereto, and no doubt the authority which first undertakes to exercise jurisdiction acquires exclusive jurisdiction. See *Taylor et al.* v. *City of Fort Wayne et al., supra.*

The only question presented here is whether the housing authority of the city of Muncie can exercise the power of eminent domain for the purpose of acquiring property without the boundaries of the city for use in the construction of a housing project. Clearly the act was intended to confer such power, and no reason is seen why the legislature might not do so. If conflicts of jurisdiction arise between county authorities and city authorities it will be time enough to decide the jurisdictional question when it is presented.

The determination of the legislature that there is a public interest in the subject-matter of the act, and that housing projects are devoted to a public use and a public benefit, seems to have the support and the concurrence of the Congress of the United States, and, as appellees advise us, the legislatures of thirty-two states which have enacted similar legislation. The constitutionality of such acts has been questioned in a number of states. No case holding a similar law, or any part of it, unconstitutional has been called to our attention. The last case sustaining such a law, to which our attention has been called, is *Knoxville Housing Authority, Inc.* v. *City of Knoxville et al.* (1939), 174 Tenn. 76, 123 S. W. (2d) 1085. A number of cases in different jurisdictions, sustaining comparable laws, are collected in *Williamson* v. *Housing Authority* (1938), 186 Ga. 673, 199 S. E. 43, in which the Georgia Housing Authority Law was upheld.

Judgment affirmed.