BRENWICK ASSOCIATES, LLC, First Industrial Acquisitions, Inc.[1] and Town of Whitestown, Indiana, Appellants–Plaintiffs,

v.

BOONE COUNTY REDEVELOPMENT COMMISSION and The Board of Commissioners of Boone County, Indiana, Appellees–Defendants.

No. 06A04–0611–CV–682.

Court of Appeals of Indiana.

July 20, 2007.

---

**1.** First Industrial Acquisitions, Inc. is not seeking relief on appeal. Pursuant to Indiana Appellate Rule 17(A), however, a party of record in the trial court is a party on appeal.

George T. Patton, Jr., Alan S. Townsend, J. Christopher Janak, Stephen C. Unger, Bose McKinney & Evans LLP, Indianapolis, IN, Attorneys for Appellants.

Eileen J. Sims, Kincaid, Taylor, Sims, Chadd & Minnette, P.C., Lebanon, IN, Thomas K. Downs, Michael A. Wukmer, Donald R. Hostetler, Ice Miller LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Brenwick Associates, LLC ("Brenwick") and the Town of Whitestown ("Whitestown") (collectively, "the Remonstrators") appeal from the trial court's judgment upholding the creation of an economic development area ("EDA") by the Boone County Redevelopment Commission ("BCRDC") and the Board of Commissioners of Boone County ("Boone County Commissioners") (collectively, "Boone County"). Boone County's proposed EDA includes 1425 acres over which Whitestown had previously initiated annexation proceedings and approximately 2500 acres that Whitestown added to its annexation ordinance after Boone County initiated creation of its EDA.

Initially, we conclude that the Remonstrators, as property owners in the proposed EDA, are aggrieved for purposes of seeking judicial review of the creation of the EDA. Furthermore, we agree with the Remonstrators that Boone County had no jurisdiction to create the EDA as to the 1425 acres in Whitestown's original annexation ordinance because Whitestown acted first to take jurisdiction over that territory. However, we agree with Boone County that the Remonstrators' statutory and due process rights were not violated because the procedure for creating an EDA is legislative, rather than judicial, in nature, and that the evidence is sufficient to support the creation of the EDA as to the additional 2500 acres.[2]

### Facts and Procedural History

In 2003, Boone County created an EDA on the east side of I–65 known as Anson ("Anson EDA"). When the Anson EDA was first proposed, the specific geographic area of the proposed development was not definitively established, and the BCRDC considered extending its boundaries to the west side of I–65. In the end, it decided to limit the Anson EDA to the east side of I–

---

2. We held oral argument in this case on June 19, 2007, in Indianapolis. We thank counsel for their helpful presentations.

65. Whitestown annexed a portion of the Anson EDA after it was created. In the Anson EDA, Boone County and Whitestown have cooperated to approve tax abatements for at least one development. After the Anson EDA was established, developers approached the BCRDC about creating an EDA on the west side of I–65. *See* Tr. p. 170.

In 2005, First Industrial Acquisitions, Inc. ("First Industrial") entered into a purchase agreement to purchase land from Brenwick on the west side of I–65 in Boone County. First Industrial approached Whitestown about potential tax abatements for its proposed development. Because Brenwick's property was outside of Whitestown's boundaries and Whitestown did not have jurisdiction to grant such tax abatements, First Industrial and Brenwick proposed that Whitestown annex Brenwick's property.

On July 24, 2006, Whitestown introduced an ordinance for the purpose of initiating annexation of approximately 1425 acres of land in Boone County ("Annexation Ordinance"). Just eleven days later, on August 4, 2006, the BCRDC adopted a Declaratory Resolution to create an approximately 4000–acre EDA on the west side of I65 ("I–65 West EDA"). The I–65 West EDA, as proposed, would include the 1425 acres Whitestown was seeking to annex. The Remonstrators sent the BCRDC a public records request seeking "any public record relating to the creation of the I–65 West Economic Development Area." Ex. Vol. I, p. 158–59. In return, they received only a copy of the Declaratory Resolution. On September 25, 2006, Whitestown amended its Annexation Ordinance to expand its proposed annexation by approximately 2500 acres. The 3918–acre proposed annexation territory overlaps much of the 4000 acre proposed I–65 West EDA.

On September 28, 2006, the BCRDC held a hearing on its Declaratory Resolution. Brenwick, First Industrial, and Whitestown filed a remonstrance against the establishment of I–65 West EDA. The BCRDC allowed the Remonstrators[3] to present evidence but refused to allow the Remonstrators to question or "cross-examine" any of the employees or members of the BCRDC. The BCRDC also refused to reveal any of the evidence it had in support of the I–65 West EDA. At the conclusion of the hearing, the BCRDC determined that it would move forward with the I–65 West EDA and adopted a Confirmatory Resolution. The Confirmatory Resolution included the following clause:

> The [BCRDC] has carefully considered the information provided to it by [Whitestown] regarding its proposed annexation of the Area and recognizes that the [BCRDC] and [Whitestown] will work cooperatively with regard to the future financing and tax abatement, as provided by Indiana law, if the Area is annexed by [Whitestown]. The [BCRDC] further commits to working with [Whitestown] in good faith on economic development in the Area if the annexation is completed.

Appellants' App. p. 54. Finally, on October 2, 2006, the Boone County Commissioners adopted a resolution approving the establishment of the I–65 West EDA.

On October 10, 2006, the Remonstrators filed an appeal with the trial court challenging the final action of Boone County establishing the I–65 West EDA. On November 8, 2006, the trial court held a hearing on the Remonstrators' appeal. At

---

3. Though First Industrial was one of the original remonstrators, it has elected not to participate in this appeal. *See supra* n. 1.

the hearing, BCRDC President Tom Lingafelter testified that the BCRDC created the I–65 West EDA because it "didn't want to see piecemeal development, small pieces here and there that are going in, each one putting infrastructure into their own area but not tying infrastructure together across that whole area." Tr. p. 173. He further testified that the I65 West EDA was created because Boone County wanted a "comprehensive plan" to ensure that development was coordinated with the upcoming construction of the Ronald Reagan highway. *Id.*

The next day, on November 9, 2006, the trial court entered judgment in favor of Boone County and against the Remonstrators, thereby upholding the creation of the I–65 West EDA. The trial court found that: (1) the Remonstrators were not "aggrieved" for purposes of Indiana Code § 36–7–14–18, the statute allowing for appeals from the creation of an EDA, and therefore did not have "standing" to pursue the appeal; and (2) even if they were "aggrieved," they did not meet their burden of proof in the appeal. *See* Appellants' App. p. 14–15. The trial court reached the following relevant conclusions of law: (1) that the BCRDC had the jurisdiction and authority to establish the I–65 West EDA and that the mere initiation of annexation did not deprive it of that authority; (2) that the BCRDC properly followed all statutory procedures to establish the I–65 West EDA; (3) that Boone County's actions in creating the I–65 West EDA were legislative, rather than judicial, in nature; (4) that the record, including five public meetings on the creation of the I–65 West EDA and four years of experience with the Anson EDA, is a sufficient factual basis on which the BCRDC based its findings supporting the creation of the I–65 West EDA; and (5) that the Remonstrators were not denied due process because the BCRDC was "acting in a legislative capaci-

ty where procedural rights of due process do not apply" and because the Remonstrators failed to show "any deprivation of any legal right[.]" *Id.* at 14–23. On November 30, 2006, the Remonstrators filed their appeal with this Court. Whitestown adopted the Annexation Ordinance on December 28, 2006, and published it on January 3, 2007. There is no indication in the materials before us that the annexation has been completed.

## Discussion and Decision

On appeal, the Remonstrators raise four issues, which we restate and reorder as: (1) whether the Remonstrators are "aggrieved" for purposes of the statute allowing for judicial review of the creation of an EDA; (2) whether Boone County had jurisdiction to create the I–65 West EDA as to the 1425 acres in Whitestown's original Annexation Ordinance; (3) whether the Remonstrators' statutory and due process rights were violated by the procedure followed by Boone County in creating the I–65 West EDA; and (4) whether the evidence is sufficient to support the creation of the I–65 West EDA.

### I. Judicial Notice

Before addressing the Remonstrators' arguments on appeal, we must resolve their pending Verified Motion to Take Judicial Notice of Initiation of Litigation and Issuance of Bonds ("Motion to Take Judicial Notice"). Remonstrators ask us to take judicial notice of the fact that Boone County recently filed a lawsuit to stop Whitestown's annexation effort because "Boone County has testified before the trial court and represented to this Court throughout this matter that it supports Whitestown's pending annexation ("Annexation") and its economic development area ("EDA") therefore does not conflict with, and is not intended to interfere with, the Annexation." Motion to Take Judicial No-

tice p. 1–2. Remonstrators also ask us to take judicial notice of the fact that Boone County has sold bonds related to the I–65 West EDA because "Boone County has [ ] requested and received, against Remonstrators' objections, an expedited appellate schedule in this matter on the basis that it is continually damaged by being unable to issue bonds through the EDA while this appeal is pending." *Id.* at 2.

Indiana Rule of Evidence 201(a) states:

> A court may take judicial notice of a fact. A judicially-noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Subsection (d) of that rule, entitled "When Mandatory," states, "A court shall take judicial notice if requested by a party and supplied with the necessary information." There is precedent in Indiana that the existence of a court record, such as Boone County's Complaint for Declaratory Judgment, and government documents, such as the bond resolution in this case, are generally susceptible to judicial notice. *See Brown v. Jones*, 804 N.E.2d 1197, 1202 (Ind.Ct.App.2004) (stating that court records are a source that "cannot reasonably be questioned"), *trans. denied*; *Kavanagh v. Butorac*, 140 Ind.App. 139, 221 N.E.2d

824, 833 (1966) (holding that Congressional Committee reports are "proper matters within judicial notice of a court").

Nonetheless, we agree with Boone County that taking judicial notice of these facts is inappropriate because they are irrelevant to the issues in this appeal.[4] Whether Boone County objects to the Whitestown's annexation effort and whether Boone County has issued bonds related to the I–65 West EDA are questions immaterial to whether Boone County's creation of the I–65 West EDA was valid, which is the issue in this appeal.[5] We therefore deny the Remonstrators' Motion to Take Judicial Notice.

## II. Standing

Turning to the merits of the Remonstrators' appeal, we must first address Boone County's argument, and the trial court's finding, that the Remonstrators are not "aggrieved" by the BCRDC's creation of the I–65 West EDA and therefore may not challenge its creation. Indiana Code § 36–7–14–18(a) allows only a "person ... aggrieved" by a final action of a redevelopment commission to appeal that final action. The trial court here agreed with Boone County and concluded that neither Whitestown nor Brenwick is aggrieved by the creation of the EDA. However, this issue presents a pure question of law, so we owe no deference to the determination of the trial court in our review. *Area Plan Comm'n, Evansville–Vanderburgh County*

---

4. Boone County also argues that if the Remonstrators had an objection to the issuance of bonds, they waived it by failing to present the objection when the BCRDC was holding public hearings on the potential issuance. But the Remonstrators are not directly challenging the issuance of the bonds. They are simply asking us to take judicial notice of that issuance. Boone County's waiver argument is inapposite.

5. Specifically regarding the bonds, Boone County's ability or inability to issue bonds is only relevant to Boone County's "Verified Emergency Motion to Shorten Appellate Deadlines, Expedite Briefing Schedule and in the Alternative for Pre-Appeal Conference." This Court already granted that motion, and the parties are operating under the expedited schedule. Remonstrators have made no effort to show that the bond issue has any other relevance to this appeal.

*v. Hatfield,* 820 N.E.2d 696, 698 (Ind.Ct. App.2005), *trans. denied.*

This Court has discussed the "aggrieved" requirement of Indiana Code § 36–7–14–18(a) as follows:

> The word "aggrieved" refers to a substantial grievance, a denial of some personal or property right or the imposition upon a party of a burden or obligation. To be "aggrieved" is to have a legal right, the infringement of which by the decree complained of will cause pecuniary injury. The appellant must have a legal interest which will be enlarged or diminished by the result of the appeal. In order for a party to be entitled to appeal from a final action, it must appear that it has a substantial interest in the subject matter of the litigation and that it is prejudiced or aggrieved from the action from which it seeks to appeal.

*Union Twp. Residents Ass'n, Inc. v. Whitley County Redevelopment Comm'n,* 536 N.E.2d 1044, 1045 (Ind.Ct.App.1989) (citing *Wiedenhoft v. Michigan City,* 250 Ind. 327, 236 N.E.2d 40, 41–42 (1968)). Both Whitestown and Brenwick own property in the proposed I–65 West EDA, and they contend that the ownership of property in a proposed EDA, standing alone, is sufficient to make a party "aggrieved." We must agree.

The language of Indiana's redevelopment statutes indicates that the creation of an economic development area takes some measure of developmental control out of the hands of existing landowners and transfers it to a redevelopment commission. *See* Ind.Code § 36–7–14–11 (listing the seven duties of a redevelopment commission); Ind.Code § 36–7–14–12.2 (listing the twenty-five powers of a redevelopment commission). Indeed, the creation of an economic development area is largely a response to the perceived failures or inadequacies of private enterprise. *See* Ind.Code § 36–7–14–2(b) ("Each unit shall, to the extent feasible under this chapter and consistent with the needs of the unit as a whole, afford a maximum opportunity for rehabilitation or redevelopment of areas by private enterprise."); Ind.Code § 36–7–14–2.5 (stating that "[t]he planning, replanning, development, and redevelopment of economic development areas are public and governmental functions that cannot be accomplished through the ordinary operations of private enterprise"). Whenever an action causes a property owner to lose any control over the development of his own property, he is sufficiently aggrieved to challenge that action. Therefore, any person who owns property in a proposed economic development area is "aggrieved" for purposes of Indiana Code § 36–7–14–18. This conclusion is supported by the sparse case law on this issue. *See Union Township,* 536 N.E.2d at 1045 (holding that a residents association "suffered no recognizable legal injury and had no standing as an aggrieved person" under Indiana Code § 36–7–14–18 because it "failed to demonstrate that it *owned property* or had a legal interest affected by the Redevelopment Commission's final action.") (emphasis added); *see also Wiedenhoft,* 236 N.E.2d at 40–43 (holding that person who owned no property in area of urban renewal project, did not reside in area, and did not occupy any property in area was not "aggrieved").

The gist of Boone County's argument is essentially that "everyone benefits from the creation of an economic development area." But in the redevelopment statutes, our legislature clearly contemplated the existence of aggrieved parties. In this regard, we agree with the sentiment of the Remonstrators' counsel at oral argument: If Whitestown and Brenwick are not aggrieved, then who is? The trial court's finding that neither Whitestown nor Bren-

wick is aggrieved by the creation of the I–65 West EDA is reversed.

### III.  Jurisdiction Over Original 1425 Acres

Despite its finding that none of the Remonstrators is aggrieved for purposes of Indiana Code § 36–7–14–18, the trial court went on to address the merits of the remonstration. We now do the same.

The Remonstrators first argue that "Boone County lacks jurisdiction to create an economic development area after Whitestown had exercised its jurisdiction by initiating annexation proceedings." Appellants' Br. p. 17. As a matter of procedure, we note Whitestown's concession that this argument only applies to the 1425 acres included in the original Annexation Ordinance. That is, because Whitestown did not amend its Annexation Ordinance to include the additional 2500 acres until September 25, 2006, after Boone County had already initiated the creation of the I–65 West EDA, Whitestown does not extend its "first in time" argument to those additional acres. *See* Appellants' Br. p. 20 n. 2.

Regarding the original 1425 acres, Whitestown concedes that Boone County would have had the authority to establish the I–65 West EDA before Whitestown initiated the annexation. Likewise, Boone County concedes that it would *not* have had the authority to establish the I–65 West EDA if the annexation had already been *completed* because Whitestown already has its own redevelopment commission. *See* Ind.Code § 36–7–14–3 ("Subject to section 3.5 of this chapter, all of the territory in a county, *except that within a municipality that has a redevelopment commission,* constitutes a taxing district for a county." (emphasis added)). The time period in dispute is the time between the initiation of the annexation proceedings and the completion of the annexation proceedings. The issue is whether

Whitestown's jurisdiction over the territory in question commences upon the introduction of the annexation ordinance or only after the annexation is complete. Again, this issue presents a pure question of law, which we will review *de novo*. *Bradley v. City of New Castle,* 764 N.E.2d 212, 216 (Ind.2002).

### A.  Is there a conflict between annexation by a municipality and a county EDA?

The trial court concluded that annexation and the creation of an EDA "are not equivalent and not mutually exclusive." Appellants' App. p. 19. As such, the Remonstrators dedicate a section of their brief (Section I.C) attempting to convince this Court that there is a conflict between Whitestown's annexation and Boone County's proposed EDA. They appear to be correct. Indeed, Boone County impliedly concedes this point: "Conversely, if the Town completes annexation in area [sic] prior to the County's establishment of an EDA, the County is without jurisdiction to establish an EDA in the annexed area. *See* [Ind.Code § 36–7–14–3]." Appellees' Br. p. 25. If there is not at least *some* conflict between Whitestown's annexation and Boone County's proposed EDA, then why could Boone County not create the EDA after the annexation is complete just as it could before the annexation? The issue to be determined, then, is when a county's authority to create an EDA ends: upon the initiation of the annexation process or upon the completion of the annexation process?

### B.  Can a county create an EDA after a municipality has initiated annexation?

The Remonstrators contend, "Once Whitestown exercised jurisdiction through introduction of its Annexation ordinance

first, Boone County lost the right to control, influence, or limit future development within the Annexation Territory." Appellants' Br. p. 18. In support of this argument, Remonstrators rely upon three Indiana cases. In *Taylor v. City of Fort Wayne*, Allen County citizens initiated proceedings before the board of county commissioners to incorporate certain land as a new town, South Wayne. Thereafter, the common council of the City of Fort Wayne sought to annex that same land. Our Supreme Court ruled in favor of the county, stating that "when there exist two tribunals possessing concurrent and complete jurisdiction of a subject-matter, *the jurisdiction becomes exclusive in the one before which proceedings are first instituted, and which thus acquires jurisdiction of the subject*." 47 Ind. 274, 282 (1874) (emphasis added).

Sixty-five years later, in *Edwards v. Housing Authority of City of Muncie*, several individuals challenged the constitutionality of a statute that provided that "the housing authority of a city shall include such city and the area within five miles thereof, excluding territory within the boundaries of another city or town, and that the county territory shall include all of the county except that portion which lies within a city or town." 215 Ind. 330, 19 N.E.2d 741, 746 (1939). The individuals argued that the statute was unconstitutional because it attempted to vest two independent public corporations—a city and a county—with the same or like powers—housing authority—within the same territory—the area within five miles of the city. *Id.* Citing *Taylor*, the Indiana Supreme Court rejected that argument, concluding that there was no threat of overlapping jurisdiction because "the authority which first undertakes to exercise jurisdiction acquires exclusive jurisdiction." *Id.*

The third case, *Ensweiler v. City of Gary*, 169 Ind.App. 642, 350 N.E.2d 658 (1976), presents circumstances opposite those in *Taylor*. That is, the city council of the City of Gary initiated annexation proceedings regarding certain land, and thereafter, Lake County citizens initiated proceedings before the county commissioners to incorporate the same land as a new town. In ruling in favor of the city, this Court restated the rule from *Taylor* that "when there exist two tribunals possessing concurrent and complete jurisdiction of a subject-matter, the jurisdiction becomes exclusive in the one before which proceedings are first instituted, and which thus acquires jurisdiction of the subject." *Id.* at 659. We explained that the purpose of this rule is to avoid the conflict and confusion that would result from separate jurisdictional authorities proceeding at the same time. *Id.*

In sum, the Remonstrators contend that *Taylor*, *Edwards*, and *Ensweiler* support the proposition that a county may not create an EDA including territory over which a municipality with a redevelopment commission has already initiated annexation.

In response, Boone County argues that *Taylor*, *Edwards*, and *Ensweiler* can be distinguished from the instant situation in that they concern contests over identical subject matter—annexation/incorporation in *Taylor* and *Ensweiler* and housing authority in *Edwards*—while annexation and the creation of an economic development area are not mutually exclusive, as evidenced by Indiana Code § 36–7–14–3.5, which indicates that a municipality can annex territory that is already included in an economic development area.

Furthermore, Boone County maintains that "[t]he Redevelopment Statutes do not grant a municipality jurisdiction over an annexed county EDA until the final effectiveness of annexation." Appellees' Br. p.

35. In support of this argument, Boone County directs us to Indiana Code § 36–7–14–3.5(c), which states, in pertinent part, *"After the final effectiveness of the annexation,* or the establishment of the municipality's district, the county redevelopment commission may not levy the special tax for new bonds or lease obligation in the annexed area" unless the municipality agrees. (Emphasis added). Quoting the Remonstrators' brief, Boone County argues, "Remonstrators misconstrue the law when they state that the Redevelopment Commission can only continue to receive property allocations if 'the county redevelopment commission had already established an economic development area and issued bonds before the annexation was *initiated.'"* Appellees' Br. p. 35. Boone County concludes, "[Indiana Code § 36–7–14–3.5] says nothing about the commencement of annexation prohibiting the County's establishment of an EDA. Rather, the statute states exactly the opposite. The statute does not limit the County's authority until *'after* the final effectiveness of the annexation.'" *Id.* at 36.

█ Though Boone County is correct that this case—involving a conflict between an EDA and annexation—is factually distinguishable from *Taylor, Edwards,* and *Ensweiler,* we believe that the holdings in those cases were broad enough to cover the situation before us. Specifically, the Indiana Supreme Court stated in *Edwards* that "the authority which first undertakes to exercise jurisdiction acquires exclusive jurisdiction." 19 N.E.2d at 746. Here, Whitestown "undertook" to exercise jurisdiction, including redevelopment jurisdiction, when it adopted the annexation ordinance. Boone County was thereafter prohibited from establishing an EDA over those 1425 acres. A contrary holding would encourage a jurisdictional tug-of-war and allow a county to significantly

alter a municipality's powers over a proposed annexation area deep into the annexation process.

In addition, the statute upon which Boone County relies, Indiana Code § 36–7–14–3.5, limits itself to situations in which "a municipality with a redevelopment district is annexing an area in a county ... *after* the county in which the municipality is located has established a redevelopment district." *See* I.C. § 36–7–14–3.5(a)(1) (emphasis added). By its terms, this statute only applies in situations in which a municipality seeks to annex territory that is *already the subject* of an EDA. There is no statute that covers the situation at issue here, that is, the initiation of an EDA *after* the initiation of annexation. As such, the principles enunciated in *Taylor, Edwards,* and *Ensweiler* are persuasive, and Whitestown, which first undertook to exercise jurisdiction over the original 1425 acres, acquired exclusive jurisdiction.

## IV. Validity of EDA Over Additional 2500 Acres

As noted above, the Remonstrators concede that their "first in time" argument only applies to the 1425 acres included in the original Annexation Ordinance. However, they also contend that the entire I–65 West EDA is invalid because the procedure followed by Boone County in establishing the EDA did not comport with statutory and due process requirements and because the evidence is insufficient to support the creation of the EDA.

### A. Statutory and Due Process Rights

The Remonstrators argue that the EDA is unlawful because they "were denied the opportunity to elicit any supporting information both through a public records request and at the public hearing." Appellants' Br. p. 28. More specifically, they contend, "The Indiana Supreme Court has already established that a redevelopment commission must set forth its supporting

evidence and subject itself to questioning at its public hearing." *Id.* at 27. The Remonstrators rely upon Indiana Code § 36–7–14–17, which requires a redevelopment commission to hold a public hearing before taking final action on a declaratory resolution and provides, in pertinent part:

> At the hearing, which may be adjourned from time to time, the redevelopment commission shall hear all persons interested in the proceedings and shall consider all written remonstrances and objections that have been filed. After considering the evidence presented, the commission shall take final action determining the public utility and benefit of the proposed project, and confirming, modifying and confirming, or rescinding the resolution....

Ind.Code § 36–7–14–17(d).

In support of this argument, the Remonstrators direct us to our Supreme Court's opinion in *Jeffersonville Redevelopment Commission v. City of Jeffersonville*, 248 Ind. 468, 229 N.E.2d 825 (1967). In *Jeffersonville*, a redevelopment commission initiated proceedings to condemn certain property it deemed to be blighted. Several of the property owners filed a remonstrance. At the hearing, counsel for the remonstrators was not permitted to examine or question any of the employees or commissioners of the redevelopment commission. The redevelopment commission "took the position that [the remonstrators would be permitted to make statements and file objections], but [the remonstrators] would not be permitted to inquire of the employees of the [redevelopment commission] concerning the evidence that [the redevelopment commission] had accumulated in declaring the area in question as blighted." *Id.* at 827.

On appeal, the redevelopment commission contended that now-Indiana Code § 36–7–14–17(d) limited remonstrators to the filing of written remonstrances or statements of objections. In examining the statute, our Supreme Court determined that "[t]he legislature intended that those persons affected by the Declaratory Resolution should have a right to call upon the commissioners and their employees to explain in total all information and data bearing upon whether or not the area described in the Declaratory Resolution was, in truth, blighted." *Id.* The Court noted that a redevelopment commission "cannot rely on its own information for support of its findings, and order of tribunal must be based on evidence produced in the hearing at which an opportunity is given to all interested parties to offer evidence and cross-examine witnesses." *Id.* These principles apply "particularly where the proceedings are judicial or quasi-judicial[.]" *Id.*

The Remonstrators argue that they were unlawfully denied a fair and meaningful hearing because their attorney was not permitted to ask questions of the BCRDC or its employees or cross-examine any witnesses. Specifically, BCRDC President Tom Lingafelter testified that the BCRDC was only there to listen and "hear if there was something we'd missed." Tr. p. 218. The Remonstrators also note that when they sent the BCRDC a public records request seeking "any public record relating to the creation of the I–65 West Economic Development Area," Ex. Vol. I, p. 158–59, they received only a copy of the Declaratory Resolution and no other information. The Remonstrators maintain that the BCRDC's actions violate the rule from *Jeffersonville* that "those persons affected by the Declaratory Resolution should have a right to call upon the commissioners and their employees to explain in total all information and data bearing upon" the redevelopment commission's decision. 229 N.E.2d at 827.

We decline to extend the holding in *Jeffersonville* to the facts of this case. That holding was based on the quasi-judicial nature of the proceedings at issue. This Court has noted that the judicial function consists of: (1) the presence of the parties upon notice; (2) the ascertainment of facts; (3) the determination of the issues; and (4) the rendition of judgment or final order regarding the parties' rights, duties, or liabilities. *Lincoln v. Bd. of Comm'rs*, 510 N.E.2d 716, 721 (Ind.Ct.App.1987), *abrogated on other grounds by McDillon v. N. Ind. Pub. Serv. Co.*, 841 N.E.2d 1148 (Ind. 2006). In *Jeffersonville*, at issue was whether the property of specific landowners was blighted. Such a determination would have a specific affect on specific landowners, as a determination of blight would allow the government to condemn property via eminent domain. Our Supreme Court determined that someone at risk of losing property due to a determination of blight should enjoy the due process rights of cross-examination and hearing all evidence against them. *See Jeffersonville*, 229 N.E.2d at 827; *see also Bradley v. Bankert*, 616 N.E.2d 18, 22 (Ind.Ct.App. 1993) (holding that a board of zoning appeals was acting in a quasi-judicial role when it interpreted an ordinance to resolve an existing controversy and "its interpretation had the effect of determining the legal rights of specific persons."), *reh'g denied, trans. denied.*

■ The proceedings in this case, on the other hand, were legislative. This Court has noted that while an agency's administrative adjudicatory function "operates retrospectively upon a particular individual or circumstance," its rulemaking function "involves an element of generality and operates prospectively upon a class of individuals[.]" *Miller Brewing v. Bartholemew County Beverage Co.*, 674 N.E.2d 193, 202 (Ind.Ct.App.1996), *trans. denied.* We agree with Boone County that the BCRDC was acting in a legislative, rather than judicial, capacity when it created the EDA because "the creation of an EDA is a general proposal that has a prospective affect on all landowners but does not infringe or affect the property rights or legal interests any [sic] specific landowner." Appellees' Br. p. 41. Specifically, the Remonstrators here, unlike the remonstrators in *Jeffersonville*, are not in danger of having their property taken via eminent domain.

Because the BCRDC's actions in creating the I–65 West EDA were legislative in nature, they were not subject to the requirements of procedural due process. *See City of Hobart Common Council v. Behavioral Inst. of Ind., LLC*, 785 N.E.2d 238, 246 (Ind.Ct.App.2003) (noting that "when a common council acts in legislative capacity, it is not subject to requirements of due process"). Federal due process rights arise only when a deprivation of life, liberty or property is threatened, and here, the mere creation of an EDA does not threaten a deprivation of any such interest. *Cf. Embree v. Kansas City and Liberty Boulevard Road Dist.*, 240 U.S. 242, 36 S.Ct. 317, 60 L.Ed. 624 (1916) (requiring due process where tax is assessed on specific person); *Londoner v. Denver*, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908) (same). The procedure followed by the BCRDC in creating the I–65 West EDA, being legislative in nature, did not violate the Remonstrators due process rights or their rights under Indiana Code § 36–7–14–17(d).

**B. Sufficiency of the Evidence**

Finally, the Remonstrators challenge the trial court's ultimate conclusion that the BCRDC properly established the I–65 West EDA. They first contend that the trial court committed reversible error by applying the wrong legal standard to their

appeal. The trial court wrote in its conclusions of law that "the Remonstrators must prove that the EDA is not of public utility and benefit." Appellant's App. p. 11. This language comes from Indiana Code § 36–7–14–18(a), which provides, in pertinent part, "The only ground of remonstrance that the court may hear is whether the proposed project will be of public utility and benefit." As the Remonstrators correctly note, the Indiana Supreme Court has determined that this clause is "unconstitutional as a restriction on the due process rights to judicial review of administrative actions." *Hawley v. South Bend, Dep't of Redevelopment*, 270 Ind. 109, 383 N.E.2d 333, 336 (1978) (citing *Prunk v. Indianapolis Redevelopment Comm'n*, 228 Ind. 579, 93 N.E.2d 171 (1950)).

Essentially, the Remonstrators contend that since the trial court cited the language of the statute, it must necessarily have limited its review to that language. However, in this case, there is no indication that the trial court so limited its review to this narrow standard. Indeed, in the next paragraph of its order, the trial court wrote that to prevail, the Remonstrators must "prove that the economic development area will not: (1) attract or retain permanent jobs; (2) increase the property tax base; (3) improve the diversity of the economic base; and (4) provide other similar public benefits." Appellants' App. p. 14 (citing Ind.Code § 36–7–14–41(b)(5)). Furthermore, the trial court was well aware of our Supreme Court's message in *Hawley*, which it cited in its order. *See id.* at 20. We will not fault the trial court for simply citing the language of a statute.

The Remonstrators also argue that "[t]he evidence and findings of the trial court do not support a determination that the establishment of the EDA was proper," Appellants' Br. p. 39, and that "[t]he

RDC's factual findings in its Declaratory Resolution were contrary to the RDC's evidence," *id.* at 43. However, the Remonstrators do not challenge any of the trial court's or the BCRDC's specific findings or conclusions. Rather, they generally contend, "The EDA is being created to obtain future control and management of development following Whitestown's Annexation and to force Whitestown to cooperate with Boone County. Such a plan and purpose are neither lawful nor contemplated or authorized by Indiana law." *Id.* at 40. The Remonstrators' argument concerning the sufficiency of the evidence can essentially be boiled down to a complaint that Boone County wanted to create the I–65 West EDA for an improper purpose, that is, to ensure that it, rather than Whitestown, controls the economic development of the area in question.

■ There is certainly evidence that indicates that Boone County created the I–65 West EDA in an effort to control the development of the area in question. *But that is the point of an EDA.* BCRDC President Tom Lingafelter testified to the trial court that the BCRDC created the I–65 West EDA because it "didn't want to see piecemeal development, small pieces here and there that are going in, each one putting infrastructure into their own area but not tying infrastructure together across that whole area." Tr. p. 173. He further testified that the I–65 West EDA was created because Boone County wanted a "comprehensive plan" to ensure that development was coordinated with the upcoming construction of the Ronald Reagan highway. *Id.* Finally, the BCRDC's Confirmatory Resolution stated:

The [BCRDC] has carefully considered the information provided to it by [Whitestown] regarding its proposed annexation of the Area and recognizes that the [BCRDC] and [Whitestown] will

work cooperatively with regard to the future financing and tax abatement, as provided by Indiana law, if the Area is annexed by [Whitestown]. The [BCRDC] further commits to working with [Whitestown] in good faith on economic development in the Area if the annexation is completed.

Appellants' App. p. 54. From this evidence, the trial court was free to conclude that the BCRDC was acting in a cooperative spirit and looking out for the best interests of the county in creating the I–65 West EDA. Therefore, in asking this Court to find that Boone County established the EDA as a power grab rather than in an effort to promote the best interests of the county, the Remonstrators are simply requesting that we judge the credibility of witnesses and reweigh the evidence, which we will not do. *See Nieto v. Kezy,* 846 N.E.2d 327, 333 (Ind.Ct.App.2006).

## Conclusion

The Remonstrators Motion to Take Judicial Notice is denied. We reverse the trial court's conclusion that the Remonstrators are not aggrieved for purposes of the judicial review statute. We also reverse the trial court's approval of the I–65 West EDA as to the 1425 acres in the original Annexation Ordinance. However, we affirm the trial court's approval of the I–65 West EDA as to the additional 2500 acres.

Affirmed in part, reversed in part.

SULLIVAN, J., and ROBB, J., concur.