ATTORNEYS FOR APPELLANTS
George T. Patton, Jr.
Alan S. Townsend
J. Christopher Janak
Stephen C. Unger
Indianapolis, Indiana

ATTORNEY FOR AMICI CURIAE
CITIES OF BEECH GROVE, BERNE, CARMEL, KOKOMO,
MITCHELL, MOUNT VERNON, AND MUNCIE, AND
TOWNS OF BARGERSVILLE, CUMBERLAND, FISHERS,
NEWBURGH, PENDLETON, ST. LEON, SHERIDAN, AND
TRAFALGAR
R. Thomas Bodkin
Evansville, Indiana

ATTORNEYS FOR APPELLEES
Eileen J. Sims
Lebanon, Indiana

Thomas K. Downs
Michael A. Wukmer
Donald R. Hostetler
Indianapolis, Indiana

ATTORNEY FOR AMICI CURIAE
ASSOCIATION OF INDIANA COUNTIES, INC., INDIANA
ASSOCIATION OF CITIES AND TOWNS, CITY OF
HOBART, AND COUNTY OF LAKE
Michael A. Howard
Noblesville, Indiana

# In the
# Indiana Supreme Court



FILED
Jun 30 2008, 3:31 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 06S04-0712-CV-573

BRENWICK ASSOCIATES, LLC, AND
TOWN OF WHITESTOWN, INDIANA,

*Appellants (Defendants below),*

v.

BOONE COUNTY REDEVELOPMENT
COMMISSION AND THE BOARD OF
COMMISSIONERS OF BOONE COUNTY,
INDIANA,

*Appellees (Plaintiffs below).*

Appeal from the Boone Superior Court No. 1, No. 06D01-0610-PL-365
The Honorable Thomas K. Milligan, Special Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 06A04-0611-CV-682

**June 30, 2008**

**Sullivan, Justice.**

The Town of Whitestown initiated annexation of unincorporated land in Boone County to spur economic development. Ten days later, the County itself initiated proceedings to establish a special taxing district (called an economic development area) that included the same unincorporated land. Our State's economic development statutes permitted Boone County to establish the economic development area at issue in this case even though it included the same land that Whitestown was attempting to annex.

**Background**

Title 36 of the Indiana Code governs the authority and operation of local government – counties, cities, towns, and townships. It authorizes municipalities (cities and towns) to annex territory so that among other things they can provide tax abatements and spur economic development. It also permits municipalities and counties to establish "redevelopment commissions" with jurisdiction to create special taxing districts called economic development areas in order to attract new capital and business investment.

On July 24, 2006, the Town of Whitestown in Boone County initiated proceedings to annex 1,425 acres of unincorporated land. Shortly thereafter, on August 4, 2006, the Boone County Redevelopment Commission (the "RDC") initiated proceedings to create the 4,055-acre I-65 West Economic Development Area (the "EDA")[1] that included the 1,425 acres Whitestown was attempting to annex. On September 25, 2006, Whitestown amended its annexation ordinance to expand the proposed annexation area to 3,918 acres, much of which overlapped the proposed EDA area. At its meeting on October 2, 2006, the Board of Commissioners of Boone County (the "Commissioners") approved establishment of the EDA.

Pursuant to Indiana law that permits qualified "remonstrators" to seek judicial review of such actions, Brenwick Associates, LLC, First Industrial Acqusitions, Inc.,[2] and Whitestown

---

[1] (Appellants' App. at 6, ¶ 12(1), citing Resolution No. 9 2006, Declaratory Resolution of the Boone County Redevelopment Commission, in Vol. I of Exs., at 1.)

[2] First Industrial did not appeal the trial court's judgment and therefore it does not appear as a party in the remaining appeals. We will use the term "Remonstrators" to refer to Brenwick Associates and the Town of Whitestown in this opinion.

2

appealed the County's establishment of the EDA. The trial court held that pursuant to Indiana's economic development statutes, the RDC "had the jurisdiction and authority to establish the EDA . . . and properly followed all statutory procedures." (Appellants' App. at 17, ¶ 18.) The Court of Appeals reversed the trial court, holding that Boone County's authority to create the EDA was precluded by Whitestown's initiation of annexation proceedings on July 24, 2006.[3,4] Brenwick Assocs., LLC v. Boone County Redevelopment Comm'n, 870 N.E.2d 474, 482 (Ind. Ct. App. 2007). The RDC and the Commissioners (collectively referred to in this opinion as the "County") petitioned for, and we granted, transfer. 878 N.E.2d 220 (Ind. 2007) (table).

## Discussion

Whitestown has the legal authority to annex the 1,425 acres; the County has the legal authority to create an economic development area. The crux of this dispute is whether the mere initiation of annexation proceedings by Whitestown through introduction of an annexation ordinance at a meeting of the Town Council precluded the County from creating the EDA. As noted supra, the Court of Appeals held that it did.

The County, aided by amici curiae, argues that the decision of the Court of Appeals disrupts orderly efforts to promote economic development in our State. Under this view, a county might be negotiating the terms of an economic development financing with a prospect in anticipation of creating an economic development area, only to have the rug pulled out from underneath it by a municipality "simply filing an annexation." (Br. of Amicus Curiae in Support of Appellees at 11-12 n.14.)

---

[3] The ruling of the Court of Appeals applied only to the 1,425 acres included with respect to which Whitestown had initiated annexation proceedings on July 24, 2006. Brenwick Assocs., LLC v. Boone County Redevelopment Comm'n, 870 N.E.2d 474, 480 (Ind. Ct. App. 2007). The Court of Appeals affirmed the trial court as to the RDC's authority to establish the EDA with respect to the balance of the 3,918 acres that was the subject of Whitestown's September 25, 2006, amendment to the proposed annexation ordinance. Id. at 486. The Remonstrators do not challenge this latter determination on transfer and we adopt and incorporate by reference the decision of our colleagues on this point. Ind. Appellate Rule 58(A)(1).

[4] The Court of Appeals also denied the Remonstrators' request that it take judicial notice of certain events that occurred subsequent to the trial court's judgment and rejected the County's contention that the Remonstrators did not have standing to challenge the RDC's decision. Brenwick, 870 N.E.2d at 478-80. We summarily affirm the decision of the Court of Appeals on the judicial notice point. App. R. 58(A)(2). We assume the Remonstrators have standing, the resolution of that point being unnecessary given our resolution of the merits of this dispute.

3

The Remonstrators, aided by amici curiae, argue almost precisely the opposite. They say that a municipality might be negotiating the terms of an economic development project with a prospect on a tract of land adjacent to the city or town that would include the extension of fire protection or utility services. Annexation of the territory could be well underway when a county "jump[s] in at the last minute and create[s] an economic development area." (Am. Br. of Amicus Curiae in Support of Appellant at 6.)

Apart from these policy arguments, the two sides differ as to whether this dispute is resolved by statutes governing economic development – this is the position of the County – or whether we must resort to common and decisional law, as the Remonstrators contend.

We note with some interest that among the amici supporting the County are the Indiana Association of Cities and Towns (IACT) and one municipality.[5] As such, this dispute does not appear to us to be one between counties and municipalities in general so much as between particular municipalities and the counties in which they are located.

We agree with the County and its amici that resolution of this appeal is dictated by the economic development statutes in title 36 of the Indiana Code.[6]

The economic development statutes (also referred to as the "redevelopment statutes"), I.C. §§ 36-7-14-1 to -48 (Supp. 2007) ("Chapter 14"), provide a comprehensive statutory framework for municipalities (both cities and towns) and counties to work together to promote economic development. Among other things, Chapter 14 balances questions of jurisdiction when municipalities and counties are undertaking economic development activities pursuant to the Act,

---

[5] Amici supporting the Remonstrators consist of seven cities and eight towns. "The Amici were neither informed of nor consulted as to IACT's involvement against one of its own members [Whitestown], and believes IACT's position is contrary to municipal interests." (Br. of Amicus Curiae in Support of Appellants at 1-2.)

[6] In 1980, the General Assembly codified many of the provisions of Indiana law governing the authority and operation of local units of government – counties, cities, towns, and townships – into a new title 36 of the Indiana Code. 1980 Ind. Acts, Pub. L. No. 211, § 1 (codified at Ind. Code tit. 36 (1980)).

4

including the issuance of bonds or other obligations payable from tax increment financing under I.C. § 36-7-14-39[7] or special benefits taxes under I.C. § 36-7-14-27.[8]

Two sections of Chapter 14 are especially relevant here: I.C. § 36-7-14-3 and I.C. § 36-7-14-3.5. Indiana Code § 36-7-14-3 authorizes municipalities and counties to establish redevelopment commissions. Once a municipality has established a redevelopment commission, "all of the territory within the corporate boundaries of a municipality constitutes a taxing district for the purpose of levying and collecting special benefit taxes for redevelopment purposes." I.C. § 36-7-14-3(b). Similarly, once a county has established a redevelopment commission, "all of the territory in the county, except that within a municipality that has a redevelopment commission, constitutes a taxing district for a county." Id. A municipality or a county with a redevelopment district may establish an "economic development area" within the district, I.C. § 36-7-14-41, thereby acquiring additional power to take certain actions with respect to real property, taxes, and debt financing in furtherance of the purposes and the nature of the economic development project in the area. See I.C. § 36-7-14-43.

The general statutory structure – we might say the default position – is that if a county establishes a redevelopment commission, all of the territory of the county constitutes a special taxing district called a county "redevelopment district." The default position is subject to a municipality within the county establishing its own redevelopment commission, at which point all of the territory within the municipality would constitute a separate special taxing district called a city or town "redevelopment district." Economic development areas can be created in both county and municipal redevelopment districts.

Chapter 14's regime of county and municipal redevelopment districts and economic development areas operates without conflict, it seems to us, except where a municipality seeks to establish its own economic development authority over territory that is already in a county

_____

[7] Tax increment financing allows a redevelopment commission to capture the increase in property tax revenue generated by its development efforts and to use that increment to pay expenses of development projects. Noblesville Redevelopment Comm'n v. Noblesville Assocs. Ltd. P'ship, 674 N.E.2d 558, 561 (Ind. 1996).

[8] "Special benefits taxes" are special taxes levied upon all of the property in the special taxing district to pay for bonds or lease obligations incurred by a county or municipal redevelopment commission which established the special taxing district. See I.C. § 36-7-14-27(a).

redevelopment district. This can happen in two different ways. First, a municipality without a redevelopment commission may decide to establish one at a point in time after the county in which it has located has established a county redevelopment district. This creates a conflict because at the point in time that a municipality creates a commission, territory that had been in the county redevelopment district becomes the territory of the municipality's redevelopment district. Second, a municipality with a commission may decide to annex territory that is located in a county redevelopment district.[9] This creates a conflict because at the point in time that the annexation is complete, territory that had been in the county redevelopment district is included in the municipality's redevelopment district.

This case falls into this second category. The RDC was established in the 1990s and "has jurisdiction over all areas of Boone County not within a municipality that has established its own redevelopment commission." (Appellants' App. at 5, ¶ 2.) For its part, Whitestown has its own redevelopment commission. As such, the county redevelopment commission does not include any of the territory in Whitestown. However, when the RDC started establishing the disputed EDA that included the unincorporated 1,425 acres, Whitestown had not completed annexation over any part of this territory; the territory area was not within its corporate boundaries and, therefore, not within its redevelopment district. Under I.C. §§ 36-7-14-3(b) & 41, the RDC here had authority to establish the EDA in the disputed area at least until such time as Whitestown completed its annexation of the disputed territory.

Our conclusion in this regard is based in part on the plain language of I.C. § 36-7-14-3(b) but also on I.C. § 36-7-14-3.5. This latter section of Chapter 14 addresses the possible jurisdictional issues that arise in the two situations discussed supra: (1) where a municipality establishes a redevelopment district after the county in which the municipality is located has established a redevelopment district; and (2) (our case) where a municipality with a redevelopment district is annexing an area in a county after the county in which the municipality is located has established a redevelopment district. The territory in question becomes part of the municipal redevelopment district upon the establishment of the municipal redevelopment

---

[9] The annexation statutes, I.C. §§ 36-4-3-1 to -22, grant cities and towns in Indiana the authority to annex unincorporated areas contiguous and non-contiguous to them. See I.C. §§ 36-4-3-3, 4.

commission in situation (1) and upon the <u>completion</u> of the annexation in situation (2). However, I.C. § 36-7-14-3.5 provides special rules to assure continued payment by the county on any outstanding bonds or lease obligations that are payable by the county redevelopment commission in whole or in part from: (1) tax increment financing in an allocation area established by a county redevelopment commission for purposes of I.C. § 36-7-14-39; or (2) the special benefits taxes levied under I.C. § 36-7-14-27.[10]

The provisions of I.C. §§ 36-7-14-3 & 3.5 present us with a comprehensive statement by the Legislature of the interaction of municipal and county economic development authority. In this case, because Whitestown had not <u>completed</u> its annexation of the disputed territory, the County had the authority to establish the EDA, and the trial court so held.

The Court of Appeals found it necessary to look to two annexation cases in which Indiana cities found themselves in conflict with counties: Taylor v. City of Fort Wayne, 47 Ind. 274 (1874); and Ensweiler v. City of Gary, 169 Ind. App. 642, 350 N.E.2d 658 (1976), transfer denied. In Taylor, a group of citizens initiated proceedings before the county to incorporate a new town prior to the City of Fort Wayne initiating proceedings to annex that same territory. 47 Ind. at 275. In Ensweiler, the City of Gary initiated annexation proceedings prior to a group of citizens initiating proceedings before the county to incorporate the same territory as a new town. 350 N.E.2d at 659. In each of these cases, the court imposed a "first-in-time" rule to resolve the dispute.[11]

---

[10] In such circumstances, the county redevelopment commission (1) continues to receive allocations of property tax proceeds from the area annexed or included in the municipality's district for the commission's allocation fund as if the annexation or establishment of the district had not occurred as long as any bonds or lease obligations payable by the county from allocated property tax proceeds are outstanding and (2) continues to levy a special tax on property in the area annexed or included in the municipality's district as long as any bonds or lease obligations payable by the county are outstanding. After the final effectiveness of the annexation or the establishment of the municipality's district, the county redevelopment commission (1) may not issue bonds or enter into leases that are payable from allocated property tax proceeds from the part of the allocation area annexed or included unless the legislative body of the municipality adopts an ordinance approving the issuance and this use of allocated property tax proceeds from that part of the allocation area and (2) may not levy the special tax for new bonds or lease obligations in the annexed or included area unless the legislative body of the municipality adopts an ordinance approving the levy. I.C. § 36-7-14-3.5.

[11] The Remonstrators also cite Edwards v. Housing Authority of the City of Muncie in support of their "first-in-time" argument. 19 N.E.2d 741 (Ind. 1939). The issue in Edwards was "whether the housing authority of the City of Muncie can exercise the power of eminent domain for the purpose of acquiring property without the boundaries of the city for use in the construction of a housing project." Id. at 746. This Court held that the Housing Authorities

7

The first-in-time jurisdictional rule applies "when there exist two tribunals possessing concurrent and complete jurisdiction of a subject-matter." Taylor, 47 Ind. at 282. In both Taylor and Ensweiler, this principle was implicated because the territory in question simply could not be both a new town and within the respective cities. This principle might be implicated in this case if the Whitestown annexation had been completed at the same point in time that the County established the EDA or, perhaps more accurately, at the same point in time that the RDC entered into bond or lease obligations payable as discussed supra. But annexation and establishing economic development areas are not the same subject matter for purposes of the first-in-time rule and, in any event, the Legislature has given us a clear picture of how it wants such conflicts resolved. Whitestown has authority to initiate annexation over the disputed land because it was contiguous to the town's boundaries. Before the completion of Whitestown's annexation proceedings, the RDC has the authority to establish an EDA in the same disputed land because this territory has not come within the corporate boundaries of Whitestown. Whitestown's annexation does not preclude establishing the EDA until the annexation is completed. Similarly, the County's establishment of the EDA does not preclude or interfere in any way with Whitestown's ability to initiate or complete annexation. And I.C. § 36-7-14-3.5 sets forth the rules for what happens when such an annexation is completed.

Lastly, the Remonstrators contend that allowing the establishment of the EDA on territory on which Whitestown has initiated annexation "runs afoul of the Home Rule Act's exclusive vesting in Whitestown of development controls within its own boundaries." (Appellants' Br. at 42.) This Court has recognized the central role that Home Rule principles play in local government law in our State. Dvorak v. City of Bloomington, 796 N.E.2d 236, 241 (Ind. 2003); Tippecanoe County v. Ind. Mfr's Ass'n, 784 N.E.2d 463, 466 (Ind. 2003). But the

---

Act of 1937 intended to confer such power to the city housing authority. Id. at 746-47. We added that "[i]t may have been the legislative intention that either a county or city housing authority might assume jurisdiction to act in respect to territory outside of the area of cities, but adjacent thereto, and no doubt the authority which first undertakes to exercise jurisdiction acquires exclusive jurisdiction." Id. at 746 (citation omitted). In addition, we said that "[n]ormally the county government has jurisdiction outside of the area of incorporated cities and towns in respect to certain matters, but the city has power to annex additional territory, which, for governmental purposes within the scope of the authority of the city, is removed from the jurisdiction of the county." Id. However, the Edwards court did not believe that there was a jurisdictional conflict between the county and the city housing authority: "[i]f conflicts of jurisdiction arise between county authorities and city authorities it will be time enough to decide the jurisdictional question when it is presented." Id. at 747. We see nothing inconsistent between Edwards and our holding here.

principal point of the Home Rule statute was to distinguish between the relative powers of state and local government; not address jurisdictional disputes between municipal and county government.  See I.C. §§ 36-1-3-1 to -9; City of N. Vernon v. Jennings Nw. Reg'l Utils., 829 N.E.2d 1, 7 (Ind. 2005) (Home Rule Act not available to resolve dispute between a city and a regional sewer district).

## Conclusion

The judgment of the trial court is affirmed.

Shepard, C.J., and Dickson, Boehm, and Rucker, JJ., concur.

9