**TOWN OF DYER, Lake County, Indiana, Appellant–Plaintiff,**

v.

**TOWN OF ST. JOHN Indiana, CWS LLC, Paul Krilich, Jacqueline Krilich and Anne Sikma, Appellees–Defendants.**

**No. 45A03–0908–CV–360.**

Court of Appeals of Indiana.

Jan. 20, 2010.

responsible for the consequences of the other's act." *Id.*

Hoffman, Crown Point, IN, Attorneys for Appellant.

David M. Austgen, Timothy R. Kuiper, Michael J. Jasaitis, Austgen Kuiper & Associates, P.C., Crown Point, IN, Attorneys for Appellee, Town of St. John.

Michael L. Muenich, Highland, IN, Attorneys for Appellees. CWS LLC, Paul Krilich, Jacqueline Krilich, and Anne Sikma.

## OPINION

BARNES, Judge.

### Case Summary

The Town of Dyer ("Dyer") appeals the trial court's dismissal of its amended complaint for declaratory judgment and a permanent injunction against the Town of St. John ("St.John"). We affirm.

### Issue

The restated issue before us is whether the trial court properly denied the validity of Dyer's attempt to annex land that St. John also was attempting to annex.

### Facts

On April 16, 2008, the Dyer Town Council introduced Ordinance 2008–04 ("Dyer 04"), which sought annexation of 3296 acres of land. The land was comprised of three separate parcels, each of which adjoined Dyer's existing boundaries, but the parcels did not adjoin each other. On April 30, 2008, the Dyer Town Council introduced Ordinance 2008–05 ("Dyer 05"), which purported to amend Dyer 04 and sought annexation of a total of 3919 acres of land, including the 3296 acres from Dyer 04. As with Dyer 04, Dyer 05 included three separate, non-adjoining parcels of land. The Dyer Town Council never adopted either Dyer 04 or Dyer 05, nor does it appear that any public hearings ever were scheduled for them.

---

William T. Enslen, Enslen, Enslen & Matthews, Hammond, IN, Thomas K.

On or before August 27, 2008, two groups of landowners within the annexation area proposed in Dyer 05 filed petitions with St. John to be voluntarily annexed by that town instead. One hundred percent of the landowners in these territories petitioned for the St. John annexation. St. John adopted two ordinances annexing this land: Ordinance 1474 ("SJ 1474"), representing one group of landowners, which was adopted on September 18, 2008, and Ordinance 1476 ("SJ 1476"), representing a second group of landowners, which was adopted on October 16, 2008. The total area of these two territories was several hundred acres.

On September 16, 2008, the Dyer Town Council introduced Ordinance 2008–18 ("Dyer 18"), which purported to amend Dyer 04 and Dyer 05. Dyer 18 sought the annexation of only 2669 acres of land included within the acreage described in Dyer 05. As with Dyer 04 and Dyer 05, the proposed annexation encompassed three separate, non-adjacent parcels of land. Dyer 18 also included all of the land that St. John ultimately annexed in SJ 1474 and SJ 1476. On November 20, 2008, Dyer held a public hearing on Dyer 18, and the Dyer Town Council adopted Dyer 18 on December 22, 2008.

Meanwhile, on October 16, 2008, Dyer filed a complaint for preliminary injunction, permanent injunction, and declaratory judgment against St. John, seeking to void SJ 1474 and SJ 1476 and prohibit further annexation attempts by St. John. Some of the landowners involved in SJ 1474 and SJ 1476 ("the landowners") intervened in the lawsuit and moved to dismiss the complaint, as did St. John. The trial court dismissed the complaint on February 21, 2009.

On March 3, 2009, Dyer filed an amended complaint; it later filed, in the alternative, a motion to correct error in the dismissal of the original complaint. The landowners and St. John again moved to dismiss the complaint. On July 6, 2009, the trial court entered an order denying Dyer's motion to correct error and dismissing the amended complaint. The trial court concluded that Dyer's annexation attempt was void and unenforceable. Dyer now appeals.

## Analysis

■ Dyer appeals the granting of St. John and the landowners' motion to dismiss pursuant to Indiana Trial Rule 12(B)(6).[1] A motion under Rule 12(B)(6) tests the legal sufficiency of a claim, not the facts supporting it. *McPeek v. McCardle*, 888 N.E.2d 171, 173 (Ind.2008). We review a trial court's dismissal under Rule 12(B)(6) de novo. *Id.* "Viewing the complaint in the light most favorable to the non-moving party, we must determine whether the complaint states any facts on which the trial court could have granted relief." *Id.* at 173–74. We may affirm the grant of a motion to dismiss if it is sustainable on any theory. *Id.* at 174.

St. John and the landowners contend that St. John's annexation efforts should be given effect over Dyer's for two princi-

---

1. In ruling on the motion to dismiss, the trial court relied upon copies of ordinances, maps, and legal descriptions of land that were attached to Dyer's complaint. "If matters outside the pleadings are presented to and not excluded by the trial court, [a motion to dismiss] shall be treated as one for summary judgment and disposed of as provided in Trial Rule 56." *Reich v. Lincoln Hills Christian Church, Inc.*, 888 N.E.2d 239, 242 (Ind.Ct. App.2008). However, no party here contends that the trial court's consideration of evidence outside the complaint served to transform the motion to dismiss into a motion for summary judgment. This may be because the complaint purported to "incorporate" the additional material. In the absence of argument by any party that we ought to consider this a summary judgment case, we will adhere to the standard of review for motions to dismiss.

pal reasons: first, because Dyer's annexation ordinance was invalid for containing three non-adjacent parcels and, second, because the ordinance finally adopted by Dyer was not introduced until after St. John had commenced its annexation proceedings. We agree with the first contention. Thus, we affirm the dismissal of Dyer's declaratory judgment on that basis and do not need to address the second contention.

■■■ "The power of annexation is fundamentally legislative, and the judicial role in annexation cases is limited to that prescribed by statute." *Chidester v. City of Hobart*, 631 N.E.2d 908, 910 (Ind.1994). A court's duty when reviewing an annexation is to determine whether the municipality has exceeded its authority and met the conditions imposed by statute. *City of Carmel v. Steele*, 865 N.E.2d 612, 616 (Ind. 2007). Judicial review of an annexation may include whether the municipality met the contiguity requirements of our annexation statutes. *See In re Remonstrance Appealing Ordinance Nos. 98–004, 98–005, 98–006, 98–007 and 98–008, of Town of Lizton,* 769 N.E.2d 622, 634 (Ind.Ct.App. 2002).[2]

Dyer's attempted annexation of 2669 acres in Dyer 18 was an "involuntary" annexation under Indiana Code Section 36–4–3–3. *See Steele,* 865 N.E.2d at 617.[3] That statute provides in part, "The legislative body of a municipality may, by an ordinance defining the corporate boundaries of the municipality, annex territory that is contiguous to the municipality. . . ." Ind.Code § 36–4–3–3(a). There are some instances in which a municipality may annex non-contiguous territory, but that is expressly limited to the annexation of municipally-owned landfills, airports, golf courses, and hospitals; in some instances, non-contiguous territory may be annexed for the express purpose of creating an industrial park. I.C. § 36–4–3–4. None of these exceptions apply here.

"Contiguous" is defined by statute as follows:

> For purposes of this chapter, territory sought to be annexed may be considered "contiguous" only if at least one-eighth (1/8) of the aggregate external boundaries of the territory coincides with the boundaries of the annexing municipality. In determining if a territory is contiguous, a strip of land less than one hundred fifty (150) feet wide which connects the annexing municipality to the territory is not considered a part of the boundaries of either the municipality or the territory.

2. We recognize that this case is procedurally odd, in that normally a challenge to an annexation must be accomplished through a remonstrance by landowners objecting to the annexation. *See Steele,* 865 N.E.2d at 615–16. Here, Dyer filed its original declaratory judgment complaint challenging St. John's annexation before it even adopted its own annexation ordinance, Dyer 18. We do not know whether any affected landowners have filed a remonstrance against Dyer 18. No party, however, contends that a declaratory judgment action is an improper method to resolve a dispute between two municipalities competing over annexation of the same land. *See Ensweiler v. City of Gary,* 169 Ind.App. 642, 350 N.E.2d 658 (1976) (declaratory judgment action to resolve priority dispute involving annexation between City of Gary and group of landowners that wanted to incorporate a different municipality).

3. The landowners wishing to be annexed by St. John initiated a "super-voluntary" annexation proceeding under Indiana Code Section 36–4–3–5.1, which occurs when 100% of landowners in a territory petition to be annexed by a municipality. *See Town of Georgetown v. Edwards Cmty., Inc.,* 885 N.E.2d 722, 726 n. 6 (Ind.Ct.App.2008). If a majority of landowners, but less than 100% of them, petition for annexation, it is a "voluntary" annexation pursuant to Indiana Code Section 36–4–3–5. *Id.*

I.C. § 36–4–3–1.5. At issue here is whether this definition of contiguous contemplates permitting a municipality to annex separate, multiple parcels of land that are not adjacent to each other, but the overall land to be annexed satisfies the 1/8 boundary requirement. The first step in interpreting a statute is to determine whether the statute is clear and unambiguous. *Steele*, 865 N.E.2d at 618. If a statute is clear and unambiguous, a court does not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. *Id.*

If a statute is susceptible to more than one interpretation, it is ambiguous and open to judicial construction. *Id.* When faced with an ambiguous statute, our primary goal is to determine, give effect to, and implement the intent of the legislature. *Id.* We read the sections of an act together in order that no part is rendered meaningless if it can be harmonized with the remainder of the statute. *Id.* "We also examine the statute as a whole." *Id.* We presume the legislature did not intend for language in a statute to be applied illogically or to bring about an unjust or absurd result. *Id.*

We conclude that the current statutory definition of "contiguous" is ambiguous with respect to whether all of the land a municipality wishes to annex in a single ordinance must form a uniform, undivided body. The statute is conspicuously silent on that question. We also note that the mere fact the statute refers to the annexation of a "territory," not "territori*es*," is of no help in deciding whether more than one distinct "territory" may be annexed simultaneously. It is a rule of statutory construction that words used in the singular may also include the plural. *Gaddis v. McCullough*, 827 N.E.2d 66, 71 (Ind.Ct. App.2005), *trans. denied; see also* I.C. § 1–1–4–1(3) (stating, "[w]ords [in a statute] importing the singular number only

may be also applied to the plural of persons and things.")

The statutory definition of contiguity first appeared in 1981. Prior to that time, there was no statutory definition of the word. *See Delph v. Town Council of Town of Fishers*, 596 N.E.2d 294, 297 (Ind. Ct.App.1992). Rather, courts were left to craft their own definition of whether annexed land was contiguous to the annexing municipality essentially on a case-by-case basis, looking to see whether "an alleged contiguity is superficial, a subterfuge or a pretext to extend boundaries which results in a territorial appendage that has little relationship to the compactness and unity of the city . . . ."; if so, an annexation was declared invalid. *Reafsnyder v. City of Warsaw*, 155 Ind.App. 455, 464, 293 N.E.2d 540, 545 (1973). Courts also were guided by the principle that the word "city" implied "an idea of compactness, unity, and continuity, and an assemblage of inhabitants living in the vicinity of each other and not separated by any other intervening division of the state." *Id.* at 463–64, 293 N.E.2d at 544–45.

Prior to 1981, it also was well-settled that a municipality could not, in a single annexation ordinance, seek to annex separate, multiple parcels of land that were not adjacent to each other, even if each parcel itself abutted the municipality at some point. *City of Indianapolis v. Pollard*, 241 Ind. 66, 72, 169 N.E.2d 405, 408 (1960); *Town of Elberfeld v. Annexation of Certain Territory of Town of Elberfeld*, 260 Ind. 499, 501, 296 N.E.2d 653, 654 (1973). The *Pollard* and *Elberfeld* cases were decided on the basis of statutory language in existence at the time, which has since been repealed, providing in part that an " 'area' " to be annexed had " 'to form a compact area abutting the municipality.' " *Pollard*, 241 Ind. at 71, 169 N.E.2d at 408 (quoting Burns Ind. Stat. § 48–702 (1960)).

There are, in addition to *Pollard* and *Elberfeld*, Indiana cases dating back to the 1800s containing language indicating that an area of land a municipality is attempting to annex should consist of one uniform body, not separate pieces of land. In 1864, our supreme court held that where annexation of multiple lots of land was concerned, it was sufficient that all of the lots "*adjoined one another,*" and one of these lots in turn adjoined the annexing municipality. *City of Evansville v. Page*, 23 Ind. 525, 528 (1864) (emphasis added). Relying on *Page*, our supreme court later held that it was not necessary for each subdivision of an annexed territory to touch the municipality's limits, "but that it is sufficient if one of them be contiguous to the city, and the others be contiguous to that *by being contiguous to each other.*" *Catterlin et al. v. City of Frankfort*, 87 Ind. 45, 51 (1882) (emphasis added). A few years later, our supreme court again held that if all of the "tracts of land proposed to be annexed, *were contiguous to each other,* and one of them was contiguous to the city, that was sufficient." *Huff v. City of LaFayette*, 108 Ind. 14, 17, 8 N.E. 701, 703 (1886) (emphasis added); *see also* 62 C.J.S. *Municipal Corporations* § 50 (1999) ("it is sufficient if all of the tracts *are contiguous to each other* and one of them adjoins or is contiguous to the city" (emphasis added)).

Much more recently, we discussed *Catterlin* and *Huff* in the *Lizton* case. There, the Town of Lizton simultaneously adopted five ordinances purporting to involuntarily annex five parcels of land. The first parcel was contiguous to Lizton's borders, but the other four parcels were not, although they were contiguous to the first parcel, either directly or through each other. We held that the annexations of the second through fifth parcels were an invalid at-tempt to avoid the current definition of contiguous, because they were attempted before annexation of the first parcel was completed.[4] *Lizton*, 769 N.E.2d at 633–34. Thus, the second through fifth parcels were not contiguous to any part of Lizton when the ordinances purporting to annex them were adopted. *Id.*

■ After careful consideration, we hold that Indiana's requirement that an annexation ordinance apply only to solid, unbroken areas of land still stands. Since 1864, there has been an understanding that all of the tracts of land a municipality seeks to annex must be contiguous to each other. When the legislature enacts a statute, we presume it is aware of the common law and does not intend to make any change in it beyond what it declares either in express terms or by unmistakable implication. *See Cincinnati Ins. Co. v. American Alternative Ins. Corp.*, 866 N.E.2d 326, 331 (Ind.Ct.App.2007), *trans. denied.* Although some of the older cases we have mentioned were decided on the basis of statutory interpretation, and not strictly common law, we still believe it is fair to apply this principle here, given the long-standing state of the law.

The legislature, in enacting Indiana Code Section 36–4–3–1.5's definition of "contiguous," apparently wanted to provide a more precise, mathematically measurable definition of the word and to reduce the amount of discretion courts had in deciding, on a case-by-case basis, whether annexed land was sufficiently contiguous to a municipality. We cannot discern, however, that it intended to dispose of the requirement that all of the tracts of land governed by an annexation ordinance be contiguous to each other. If the legislature had wanted to allow the annexation of

---

**4.** We held that annexation of the first parcel was not complete when the ordinance was adopted, and instead only was complete when the statutory time period for a remonstrance against the annexation had run. *Lizton*, 769 N.E.2d at 633.

multiple, non-adjacent parcels of land in a single annexation ordinance, which would appear to contravene over a century of case law, it could have expressly drafted the new definition of contiguity in 1981 to clearly say so. It did not, and it can be just as important to recognize what a statute does not say as to recognize what it does say. *See N.D.F. v. State*, 775 N.E.2d 1085, 1088 (Ind.2002).

■ We also believe that maintaining the requirement that an annexation ordinance encompass only one solid block of land is consistent with the historical purposes behind the contiguity requirement. It has been said, "the purpose of the contiguity requirement is to allow the natural and gradual extension of municipal boundaries to areas that adjoin one another in a reasonably substantial physical sense." *LaSalle Bank Nat'l Ass'n v. Village of Bull Valley*, 355 Ill.App.3d 629, 292 Ill.Dec. 308, 826 N.E.2d 449, 457 (2005), *app. denied.* In that way, the delivery of services, such as sewer, fire, and police services, is more convenient for the city and more efficient for its citizens. *Matter of Annexation of Certain Territory to Village of Chatham*, 245 Ill.App.3d 786, 185 Ill. Dec. 593, 614 N.E.2d 1278, 1282 (1993), *app. denied* (quoting *People ex rel. County of St. Clair v. City of Belleville*, 84 Ill.2d 1, 48 Ill.Dec. 723, 417 N.E.2d 125, 130 (.1981)).

It is true that the precise holding of *Reafsnyder* regarding the definition of contiguity is no longer valid. Still, we believe it contains appropriate general observations regarding the contiguity requirement in annexation proceedings:

> The legal as well as the popular idea of a municipal corporation in this country, both by name and use, is that of one-ness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants—that is, a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interests because residents of the same place, not different places. So, as to territorial extent, the idea of a city is one of unity, not of plurality; of compactness or contiguity, not separation or segregation.

*Reafsnyder*, 155 Ind.App. at 464, 293 N.E.2d at 545 (quoting *Clark v. Holt*, 218 Ark. 504, 237 S.W.2d 483, 485 (1951)).

Permitting municipalities to simultaneously annex multiple, disjointed parcels of land in one annexation ordinance has the potential to violate some of the basic principles behind the contiguity requirement. If this was permitted, a municipality could simultaneously seek to annex two tracts of land on opposite sides of the municipality, with each tract containing greatly varying topographical and land use characteristics and population densities. The ability of the municipality to efficiently provide city services such as fire, police, and sewer could differ between the various non-contiguous parcels. However, the city would be required to present one unified fiscal plan for divergent areas, which could lead to substantial complications. *See* I.C. § 36–4–3–3.1. Additionally, residents of non-adjacent areas to be annexed could have very different opinions on the desirability of annexation. In the case of remonstrating against an involuntary annexation, or in voting for a less-than-"super-voluntary" annexation, residents of less populous areas could be forced into annexation by residents of more populous areas. *See Krupp v. Taylor*, 20 Ill.App.2d 282, 156 N.E.2d 13, 15 (1959) (holding that statute permitting annexation of contiguous "territory" did not permit disjointed parcels of land to be annexed in single proceeding, because otherwise it could allow residents in more populous parcel(s) to force residents in less populous parcel(s) to submit to annexation).

Similarly, in the event of a remonstrance, a court is required to consider a variety of factors in deciding whether to order a proposed annexation not to take place, including for example whether annexation was in the "best interests" of the landowners, the financial impact of the annexation, and whether another service provider is adequately providing things such as police and fire protection. *See* I.C. § 36–4–3–13. A court's task in this regard would be more complicated if it was required to consider various parcels of land with differing characteristics.

Finally, we note that if a municipality were permitted to annex multiple non-adjacent parcels, it potentially could annex a parcel of land that is not contiguous at all to the municipality, so long as another parcel of land meeting the 1/8 of external aggregate boundaries contiguity requirement (in combination with the other parcel) also was annexed. *See* I.C. § 36–4–3–1.5. This clearly would be improper. There cannot be unannexed areas completely separating annexed areas, unless a municipality has annexed non-contiguous land that is expressly permitted by Indiana Code Section 36–4–3–4.

It is true that a single, unified annexation area also may include variations in topography, land use, population densities, and the wishes of the population regarding annexation. Still, the potential for wide divergences in these characteristics increases significantly if wholly disjointed parcels of land could be annexed together. Thus, we conclude, for all the reasons we have listed, that a municipality is not permitted to annex parcels of land that are not adjacent to each other under the umbrella of a single annexation ordinance, even if 1/8 of the aggregate external boundaries of that land is contiguous to the municipality. We cannot conclude the legislature intended to alter this long-standing rule when it enacted Indiana Code Section 36–4–3–1.5. The legislature, of course, is free to re-word that statute if it wishes to permit the simultaneous annexation of multiple plots of land that are not contiguous to each other.

### Conclusion

The trial court correctly concluded that Dyer's complaint for a declaratory judgment and permanent injunction against St. John failed to state a claim upon which relief could be granted because Dyer's own annexation ordinance was void and invalid for attempting to annex multiple, disconnected parcels of land in a single proceeding. We affirm the dismissal of the complaint.

Affirmed.

MATHIAS, J., and BROWN, J., concur.