# FOR PUBLICATION

ATTORNEYS FOR APPELLANT
COVERED BRIDGE HOMEOWNERS
ASSOCIATION, INC.:

**ANDREW WRIGHT**
Andrew Wright, PC
Salem, Indiana

**BRYAN H. BABB**
**STEPHEN C. UNGER**
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLANT
BOARD OF CLARK COUNTY
COMMISSIONERS:

**C. GREGORY FIFER**
Applegate Fifer Pulliam LLC
Jeffersonville, Indiana

ATTORNEY FOR APPELLEES:

**WILLIAM P. McCALL, III**
Mosley, Bertrand, Jacobs & McCall
Jeffersonville, Indiana



FILED
Jul 18 2012, 8:23 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| COVERED BRIDGE HOMEOWNERS ASSOCIATION, INC., CLARK COUNTY, INDIANA COMMISSION, et al., | ) ) ) ) |
| Appellants-Defendants, | ) ) |
| vs. | ) ) |
| TOWN OF SELLERSBURG, INDIANA, | ) ) |
| Appellee-Plaintiff. | ) ) |
| _____ | ) No. 10A01-1101-PL-13 |
| | ) |
| IN THE MATTER OF THE ORDINANCE TO ANNEX APPROXIMATELY 1,852 ACRES OF REAL ESTATE INTO THE TOWN OF SELLERSBURG, INDIANA: | ) ) ) ) ) |

COVERED BRIDGE HOMEOWNERS        )
ASSOCIATION, INC., et al.,        )
                                  )
    Appellants-Petitioners,        )
                                  )
        vs.        )
                                  )
TOWN OF SELLERSBURG, INDIANA and        )
THE TOWN BOARD OF TRUSTEES OF        )
SELLERSBURG, INDIANA,        )
                                  )
    Appellees-Respondents.        )

CONSOLIDATED APPEAL FROM THE CLARK SUPERIOR COURT
The Honorable Jerome F. Jacobi, Judge
Cause No. 10D02-1001-PL-66
The Honorable Roger D. Davis, Special Judge
Cause No. 10D02-1003-MI-658

**July 18, 2012**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

In June 2008, the Town of Sellersburg's council ("the Council") approved a written fiscal plan and introduced a proposed ordinance to annex over 1800 acres in Clark County, but the Council failed to use the county auditor's current tax list to send notice of a public hearing on the proposed annexation to the affected landowners as required by statute. As a result, an unknown number of landowners did not receive notice of the hearing. The hearing was scheduled for August 2008, but Sellersburg subsequently cancelled it because of the defective notice. Negotiations ensued between the Council and the landowners regarding the proposed annexation, but were ultimately unsuccessful.

2

In August 2009, the landowners filed a petition with the Clark County Commissioners ("the Commissioners") to incorporate the new Town of Covered Bridge. In September 2009, the Council updated the fiscal plan for annexation and scheduled a public hearing, which was properly noticed and was held in November 2009. In December 2009, the Commissioners adopted an ordinance approving the landowners' petition to incorporate. Six days later, the Council adopted the proposed annexation ordinance.

Sellersburg filed a complaint for declaratory relief against the Commissioners, alleging that the annexation proceeding was "first in time" and therefore should take priority over the incorporation proceeding. An association of the affected landowners intervened and asked for a judgment declaring that the incorporation proceeding was "first in time" because Sellersburg had failed to comply with the statutory notice provisions and had failed to hold the public hearing in August 2008. Both Sellersburg and the Commissioners filed cross-motions for partial summary judgment on the issue of their respective "jurisdiction" to annex or incorporate the same territory.

Meanwhile, the landowners' association and others filed a remonstrance against the annexation. Sellersburg filed a motion to dismiss, asserting that many of the landowners were bound by remonstrance waiver provisions that had been executed by subdivision developers as a condition for connection to Sellersburg's sewer system and had been recorded as part of the subdivision restrictions and protective covenants, and thus the remonstrance did not have enough valid signatures. In response, the remonstrators argued that, pursuant to statute, a remonstrance waiver is valid only if it is included in a sewer

contract between a developer and a municipality that is recorded in the county recorder's office and that no such contract had been recorded here.

Sellersburg prevailed in both cases, and the landowners' association brought this consolidated appeal. We hold that the annexation proceeding is first in time and takes priority over the incorporation proceeding because it was validly instituted in June 2008 and Sellersburg's initial failure to comply with the statutory notice provisions and hold a public hearing did not invalidate the annexation. We also hold that the statutory remonstrance waiver requirements were substantially complied with and thus the remonstrance lacks sufficient valid signatures. Consequently, we affirm the rulings in both cases.

## Facts and Procedural History[1]

The relevant facts are largely undisputed. On June 25, 2008, pursuant to Indiana Code Section 36-4-3-3.1, the Council adopted a written fiscal plan for the proposed annexation of approximately 1852 acres in Clark County that include the subdivisions of Covered Bridge and Willows of Covered Bridge.[2] The proposed effective date of the annexation was December 31, 2008. The Council also introduced a proposed ordinance to annex that territory. Under Indiana law, a municipality may adopt an annexation ordinance only after its "legislative body has held a public hearing concerning the proposed annexation. The municipality shall hold the public hearing not earlier than sixty (60) days after the date the

---

[1] We held oral argument on May 23, 2012. We thank counsel for their presentations.

[2] *See* Ind. Code § 36-4-3-3.1(b) ("A municipality shall develop and adopt a written fiscal plan and establish a definite policy by resolution of the legislative body that meets the requirements set forth in section 13 of this chapter."). We remind counsel that the table of authorities in an appellate brief shall list the authorities "alphabetically or numerically, as applicable." Ind. Appellate Rule 46(A)(2).

ordinance is introduced. All interested parties must have the opportunity to testify as to the proposed annexation." Ind. Code § 36-4-3-2.1(b). The public hearing was scheduled for August 28, 2008, at the Sellersburg Town Hall.

Indiana Code Section 36-4-3-2.1(b) further provides that notice of the hearing must be published in a local newspaper at least sixty days before the hearing and that notice must also be "mailed as set forth in" Indiana Code Section 36-4-3-2.2. Indiana Code Section 36-4-3-2.2(b) provides in pertinent part that "[b]efore a municipality may annex territory, the municipality shall provide written notice of the hearing," and that, with certain exceptions not relevant here, "the notice must be sent by certified mail at least sixty (60) days before the date of the hearing to each owner of real property, as shown on the county auditor's current tax list, whose real property is located within the territory proposed to be annexed."[3] Indiana

---

[3] The notice must include the following:

(1) A legal description of the real property proposed to be annexed.

(2) The date, time, location, and subject of the hearing.

(3) A map showing the current municipal boundaries and the proposed municipal boundaries.

(4) Current zoning classifications for the area proposed to be annexed and any proposed zoning changes for the area proposed to be annexed.

(5) A detailed summary of the fiscal plan described in [Indiana Code Section 36-4-3-13].

(6) The location where the public may inspect and copy the fiscal plan.

(7) A statement that the municipality will provide a copy of the fiscal plan after the fiscal plan is adopted immediately to any landowner in the annexed territory who requests a copy.

(8) The name and telephone number of a representative of the municipality who may be contacted for further information.

Ind. Code § 36-4-3-2.2(d).

Code Section 36-4-3-2.2(e) says, "If the municipality complies with this section, the notice is not invalidated if the owner does not receive the notice."

It is important to note that the legislature has chosen not to establish a deadline for when the hearing on the proposed annexation must be held, or when notice of the hearing must be published or mailed, so long as it is at least sixty days before the hearing. The purpose of the statutory requirements that have been imposed is to ensure that interested persons are given ample time to study the relevant issues as well as a meaningful opportunity to be heard on the proposed annexation. Stated differently, the lack of a deadline for holding a hearing ensures that an annexation cannot be rushed through without significant public input but does not evidence a legislative concern regarding the pace of the process being too slow.

Here, Sellersburg published notice of the hearing in a local newspaper in accordance with Indiana Code Section 36-4-3-2.1(b)(1). However, according to the affidavit of Council President Brian Meyer, the Council "was advised by its attorney that the certified mailing to the residents of the area of proposed annexation was defective due to the failure to utilize the Clark County Auditor's current tax list." Appellant's App. at 280. A newspaper article dated August 14, 2008, quoted Sellersburg's attorney as saying that "[a]n unknown number of residents didn't receive the notices" regarding the hearing and that "a legal challenge based on that mistake could be hard to overcome." *Id*. at 421. The same article quoted Meyer as saying that the Council would have to "start from square one" because of the notice problem but that the scheduled hearing would still be held so that the Council could "listen to

residents' views." *Id.* Meyer also said that he "expected the [C]ouncil to proceed with the annexation, but because of the notice problem it [could not] take effect until Jan. 1, 2010." *Id.*; *see* Ind. Code § 36-4-3-7(b) (stating that an annexation ordinance "may not take effect during the year preceding a year in which a federal decennial census is conducted. An ordinance that would otherwise take effect during the year preceding a year in which a federal decennial census is conducted takes effect January 1 of the year in which a federal decennial census is conducted."). When residents arrived at the Sellersburg Town Hall on August 28 to attend the hearing, the building was closed. A notice canceling the hearing was published in a local newspaper two days later.[4]

Indiana Code Section 36-4-3-2.1(c) provides that a municipality may adopt an annexation ordinance not earlier than thirty days or not later than sixty days after its legislative body has held the requisite public hearing on the proposed annexation. No public hearing was held and no annexation ordinance was adopted by the Council in 2008, but the Council hired a title company to obtain the mailing addresses of affected property owners as shown by the county auditor's current tax list. During the spring and summer of 2009, negotiations regarding the proposed annexation ensued between Council member Paul Rhodes and Larry Gupton of the Covered Bridge Homeowners Association, Inc. ("the

---

[4] Sellersburg asserts that it "published notice of the cancellation of the public hearing, which due to no fault of [Sellersburg] did not appear in the [newspaper] until August 30, 2008." Appellee's Br. at 9 (citing Appellant's App. at 474). The cited document appears to be a form generated by the newspaper's publisher indicating the cost of the notice and averring that the notice had been published on August 30, 2008. The form does not indicate, however, when Sellersburg submitted the notice to the publisher.

Association"), which represents residents of Covered Bridge and Willows of Covered Bridge (collectively, "the Landowners"). The negotiations were unsuccessful.

On August 21, 2009, pursuant to Indiana Code Section 36-5-1-2, the Landowners filed with the Commissioners a petition to incorporate the new Town of Covered Bridge.[5] The Landowners filed an amended petition on September 2, 2009. On September 17, 2009, the Commissioners passed a resolution recognizing the filing of the incorporation petition and establishing the procedures for consideration of the petition. The Commissioners referred the petition to the Clark County Planning Commission, which ultimately recommended its approval.[6] On December 22, 2009, the Commissioners adopted an ordinance approving the Landowners' incorporation petition.[7]

On September 21, 2009, more than two weeks after the Landowners filed their amended incorporation petition, the Council passed a resolution to update the fiscal plan for

[5] *See* Ind. Code § 36-5-1-2(a) ("Proceedings to incorporate a town may be instituted by filing a petition in quadruplicate with the executive of each county in which a part of the territory sought to be incorporated is located. The petition must be signed by at least fifty (50) owners of land in the territory and must [contain certain statements not relevant here].").

[6] *See* Ind. Code § 36-5-1-4 ("(a) On receipt of a petition for incorporation, the county executive shall examine it to see that it meets the requirements of sections 2 and 3 of this chapter. If the petition is in order, the executive shall mark it with the date of filing and immediately forward one (1) copy to the plan commission, if any, having jurisdiction. (b) The commission shall investigate the proposed incorporation and report their recommendations of approval or disapproval to the county executive at least ten (10) days before the hearing required by section 5 of this chapter. In making their investigations, they may use the services of any state or local government agency, and in making their report and recommendations, they shall be guided by the requirements for incorporation set out in section 8 of this chapter.").

[7] As with an annexation ordinance, "[a]n ordinance incorporating a town … may not take effect during the year preceding a year in which a federal decennial census is conducted. An ordinance under this section that would otherwise take effect during the year preceding a year in which a federal decennial census is conducted takes effect January 1 of the year in which a federal decennial census is conducted." Ind. Code § 36-5-1-10.1(f).

annexation that it had adopted in June 2008. Sellersburg then scheduled a public hearing regarding the proposed annexation for November 25, 2009, and this time it complied with the notice requirements of Indiana Code Section 36-4-3-2.2(b) and held the hearing as scheduled. On December 28, 2009, six days after the Commissioners adopted the incorporation ordinance, the Council adopted the annexation ordinance.

On January 15, 2010, under cause number 10D02-1001-PL-66 ("the Incorporation Action"), Sellersburg filed a complaint for declaratory relief against the Commissioners, asking the court to determine, among other things, that its annexation proceeding was first in time and thus the Commissioners lacked "jurisdiction" to "consider the incorporation petition or incorporate the proposed Town of Covered Bridge." Appellant's App. at 31. In their answer, the Commissioners named Gupton as a third-party defendant in his representative capacity on behalf of the petitioners for the incorporation of the Town of Covered Bridge. The Association intervened on behalf of the Landowners and counterclaimed for a declaratory judgment stating that Sellersburg had failed to comply with the statutory notice provisions in 2008 and had "abandoned" the annexation proceeding before the Landowners filed their petition to incorporate in August 2009, and thus Sellersburg lacked "jurisdiction to initiate annexation proceedings" in September 2009. *Id*. at 399, 400. Pursuant to Indiana Trial Rule 56, both Sellersburg and the Commissioners filed cross-motions for partial summary judgment on the issue of their respective "jurisdiction" to annex or incorporate the same territory. *Id*. at 393, 407. The Association filed a memorandum and designated evidence in opposition to Sellersburg's cross-motion for partial summary judgment.

9

Meanwhile, on March 29, 2010, under cause number 10D02-1003-MI-658 ("the Remonstrance Action"), the Association, Gupton, and others filed a remonstrance against the annexation, naming Sellersburg and its board of trustees as respondents.[8] The remonstrators asserted that at least 65% of the landowners in the territory to be annexed had signed the remonstrance, as required by Indiana Code Section 36-4-3-11.[9] The territory contains 775 parcels, and the owners of 632 of those parcels (nearly 82%) had signed the remonstrance. Sellersburg filed a motion to dismiss, asserting that the 496 Landowners in Covered Bridge and Willows of Covered Bridge who had signed the remonstrance were bound by "waiver of remonstrance agreement[s]" that were executed by the subdivisions' developers "as a condition for connection to [Sellersburg's] sewer system" and recorded as part of the subdivisions' restrictions and protective covenants in the county recorder's office, and thus the remonstrance did not have enough valid signatures. *Id.* at 977. In response, the remonstrators asserted that, pursuant to Indiana Code Section 36-9-22-2, a remonstrance waiver is valid only if it is included in a sewer contract between a developer and a

---

[8] A remonstrance must be filed within ninety days after the publication of the annexation ordinance, "must be accompanied by a copy of that ordinance, and must state the reason why the annexation should not take place." Ind. Code § 36-4-3-11(a).

[9] Indiana Code Section 36-4-3-11(a) provides in pertinent part that

whenever territory is annexed by a municipality under this chapter, the annexation may be appealed by filing with the circuit or superior court of a county in which the annexed territory is located a written remonstrance signed by:
> (1) at least sixty-five percent (65%) of the owners of land in the annexed territory; or
> (2) the owners of more than seventy-five percent (75%) in assessed valuation of the land in the annexed territory.

The assessed valuation threshold is not at issue here.

municipality that is recorded in the county recorder's office and that no such contract had been recorded for either subdivision.

In September 2010, Special Judge Roger D. Davis held a hearing on all pending motions in the Remonstrance Action. On December 3, 2010, Judge Davis issued a final appealable order that reads in pertinent part as follows:

> [T]he court finds and concludes that purchasers of lots in the Covered Bridge and Willows subdivisions were on notice of the waiver of remonstrance provision in their restrictions recorded in the public records of Clark County, Indiana. Further, there was an agreement between [Sellersburg] and the subdivision developers as evidenced by the waiver provision in the restrictions, town board minutes, and testimony of witnesses before the court. Finally, the legislature has expressed a policy not only in favor of waiver of remonstrance rights concerning sewer works, but a mandatory requirement for such a waiver in a contract for the provision of sewer service in certain circumstances. Because of the waiver provisions petitioners lack the required percentage of total landowner signatures and the case should be dismissed.

*Id*. at 15.

In November 2010, Judge Jerome F. Jacobi held a summary judgment hearing in the Incorporation Action. On December 17, 2010, Judge Jacobi issued a final appealable order granting Sellersburg's motion for partial summary judgment on the basis that the incorporation ordinance was "void for lack of subject matter jurisdiction" because Sellersburg "acquired exclusive subject matter [jurisdiction] over the disputed area" in July 2008 by adopting the written fiscal plan and introducing the proposed annexation ordinance "and continuing thereafter until completion [on] December 28, [2009]." *Id*. at 2.

The Association appealed both rulings. On the Association's motion, and over Sellersburg's objection, those appeals were consolidated under a single appellate cause

11

number, and the Association and Sellersburg filed consolidated appellant's and appellee's briefs.[10] Additional facts will be provided as necessary.

## Discussion and Decision

The Association contends, and Sellersburg does not dispute, that a reversal of the ruling in the Incorporation Action would essentially render the ruling in the Remonstrance Action moot, at least for the time being.[11] Therefore, we address the Incorporation Action first.

### I. Incorporation Action

Our standard of review in summary judgment cases is well settled:

Summary judgment is appropriate only where the designated evidentiary matter shows that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. When reviewing a grant of a motion for summary judgment, we stand in the shoes of the trial court. Once the moving party demonstrates, prima facie, that there are no genuine issues of material fact as to any determinative issue, the burden falls upon the non-moving party to come forward with contrary evidence. The non-moving party may not rest upon the pleadings but must instead set forth specific facts, using supporting materials contemplated under Trial Rule 56, which show the existence of a genuine issue for trial. The party appealing the grant of summary judgment bears the burden of persuading this court that the trial court erred, but we still carefully scrutinize the entry of summary judgment to ensure that the non-prevailing party was not denied its day in court. We do not weigh the evidence but rather consider the facts in the light most favorable to the nonmoving party. We may sustain the judgment upon any theory supported by the designated evidence.

---

[10] The Commissioners filed a joinder in partial support of the Association's reply brief as to the Incorporation Action but did not file a separate brief.

[11] In its complaint for declaratory relief, Sellersburg alleged that the Commissioners failed to comply with numerous statutory requirements in their consideration of the incorporation petition. Sellersburg did not move for summary judgment on any of those grounds, however.

*Auburn Cordage, Inc. v. Revocable Trust Agreement of Treadwell*, 848 N.E.2d 738, 747 (Ind. Ct. App. 2006) (citations omitted).

The summary judgment order contains extensive findings of fact. Such findings "are not required in the summary judgment context, and although they offer valuable insight into the trial court's rationale for its judgment and facilitate our review, they are not binding on this court." *Golitko v. Ind. Dep't of Corr.*, 712 N.E.2d 13, 15 (Ind. Ct. App. 1999), *trans. denied*. "The fact that the parties made cross-motions for summary judgment does not alter our standard of review. Instead, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Castetter v. Lawrence Twp.*, 959 N.E.2d 837, 843 (Ind. Ct. App. 2011) (citation omitted). "Where, as here, the relevant facts are undisputed and the issue presented on appeal is a pure question of law, we review the matter de novo." *City Sav. Bank v. Eby Constr., LLC*, 954 N.E.2d 459, 462 (Ind. Ct. App. 2011), *trans. denied* (2012).

Both sides characterize the decisive issue as one of "jurisdiction," as in whether the Commissioners had "jurisdiction" to consider the incorporation petition or whether they were precluded from doing so because the Council had exclusive "jurisdiction" by virtue of its annexation proceeding. The parties' use of "jurisdiction" in this sense may be traced to *Taylor v. City of Fort Wayne*, 47 Ind. 274 (1874), in which Fort Wayne's common council sought to annex land that was already the subject of an incorporation proceeding before Allen County's board of commissioners. Our supreme court ruled in favor of the commissioners, stating,

[T]he common councils of cities are authorized to annex certain territory to the city. Under the act to organize towns, that same territory may become incorporated as a town, and thus become a municipal government, outside and independent of the city, before it is annexed. The General Assembly has authorized both proceedings. … [A]fter an application has been filed before the commissioners by residents of territory sought to be incorporated, it is the duty of the commissioners to hear the application and make such orders as the evidence introduced and steps taken by the petitioners entitle them to. The proceedings before the board of commissioners give that body jurisdiction over the subject-matter, and it can not be defeated by any act of the common council.

Having acquired jurisdiction, it is their duty to retain it and proceed to a final hearing and disposition of the application.

It is a clear principle of jurisprudence, that when there exist two tribunals possessing concurrent and complete jurisdiction of a subject-matter, the jurisdiction becomes exclusive in the one before which proceedings are first instituted, and which thus acquires jurisdiction of the subject.

*Id*. at 281-82 (citations omitted). This principle has since become known as the "first-in-time" rule. *Brenwick Assocs., LLC v. Boone Cnty. Redev. Comm'n*, 889 N.E.2d 289, 294 (Ind. 2008).

This Court reiterated that principle in *Ensweiler v. City of Gary*, 169 Ind. App. 642, 350 N.E.2d 658 (1976), *trans. denied*. In that case, Ensweiler initiated a proceeding to incorporate land that already was the subject of an annexation proceeding by the city. The trial court issued a declaratory judgment in favor of the city. On appeal, we quoted the foregoing paragraph from *Taylor* and said,

The rule relates to jurisdiction to make a determination. Its purpose is to avoid the conflict and confusion which would result from separate jurisdictional authorities proceeding at the same time. *Furthermore, we agree with the parties that in order to be "first," a proceeding must have been validly instituted so that the authority in question has acquired jurisdiction.* Stated conversely, if the city plan to annex had not proceeded to the point of

14

invoking the jurisdiction of the authority (here, the city council), it would not preclude determination by the other authority (the county commissioners). Similarly, even if the city had attempted to invoke the jurisdiction of the city council, if its proceedings were jurisdictionally defective, the bar would not operate since the city council would not have acquired jurisdiction to determine the proceeding.

*Id*. at 644, 350 N.E.2d at 659 (emphasis added).

Ensweiler argued that the city's "annexation proceedings were jurisdictionally defective until after his petition [for incorporation] was filed because of the city's failure to comply" with a section of its zoning ordinance which required that a zoning plan for the territory be forwarded to the common council by the plan commission prior to the annexation. *Id*. at 645, 350 N.E.2d at 660. We found his argument unpersuasive:

The construction urged by Ensweiler would require the initiating party to complete all proceedings necessary to secure a zoning plan for the area before the first step toward annexation was taken by the city. It would require new proceedings if, and each time, any change was made in the area proposed to be annexed. It would seek investigation and action by the plan commission prematurely. We believe such a construction would deter, rather than promote, orderly growth of the city and the utilization of comprehensive land use controls. We therefore hold that jurisdiction of the city council was not defeated by any failure to secure a zoning plan before initiating proceedings to annex.

15

*Id.*, 350 N.E.2d at 660.[12]

At this point, we note that Indiana's appellate courts have redefined the concept of "jurisdiction" in recent years:

> In *K.S. v. State*, 849 N.E.2d 538 (Ind. 2006), our supreme court clarified that, in the judicial context, there are only two kinds of jurisdiction: subject matter jurisdiction, which is "the power to hear and determine cases of the general class to which any particular proceeding belongs[,]" and personal jurisdiction, which "requires that appropriate process be effected over the parties." *Id.* at 540. The court noted that "[a]ttorneys and judges alike frequently characterize a claim of procedural error as one of jurisdictional dimension. The fact that a trial court may have erred along the course of adjudicating a dispute does not mean it lacked jurisdiction." *Id.* at 541. The court further explained, "Real jurisdictional problems would be, say, a juvenile delinquency adjudication entered in a small claims court, or a judgment rendered without any service of process. Thus, characterizing other sorts of procedural defects as 'jurisdictional' misapprehends the concepts." *Id.* at 542.

*Robert Lynn Co. v. Town of Clarksville Bd. of Zoning App.*, 867 N.E.2d 660, 672 (Ind. Ct. App. 2007), *trans. denied.*[13] In *Robert Lynn Co.*, we concluded that these jurisdictional principles are "equally applicable to administrative proceedings." *Id.*; *see also City of*

---

[12] In its summary judgment ruling in the Incorporation Action, the court questioned sua sponte whether it was "empowered to hear a collateral challenge to the legal validity of annexation proceedings." Appellant's Br. at 7. Indeed it is, as both *Ensweiler* and Indiana's Declaratory Judgment Act make clear. *See* Ind. Code § 34-14-1-2 ("Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, *municipal ordinance*, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.") (emphasis added); *see also Town of Dyer v. Town of St. John*, 919 N.E.2d 1196, 1199 n.1 (Ind. Ct. App. 2010) (addressing dismissal of town's declaratory judgment complaint against another town competing for annexation of same territory) ("We recognize that this case is procedurally odd, in that normally a challenge to an annexation must be accomplished through a remonstrance by landowners objecting to the annexation.... No party, however, contends that a declaratory judgment action is an improper method to resolve a dispute between two municipalities competing over annexation of the same land.") (citing, inter alia, *Ensweiler*).

[13] Coincidentally, Robert Lynn Company is the developer of Willows of Covered Bridge. Appellant's App. at 1121.

16

*Charlestown Advisory Planning Comm'n v. KBJ, LLC*, 879 N.E.2d 599, 602 (Ind. Ct. App. 2008) (distinguishing legal error from lack of subject matter jurisdiction in replatting dispute involving planning commission) (citing *Robert Lynn Co.*).

The question then becomes how to reformulate the first-in-time rule as stated in *Taylor* and *Ensweiler* in light of the redefinition of "jurisdiction" in *K.S.* and *Robert Lynn Co.* We believe that replacing "jurisdiction" with "authority" will suffice. As stated in *Taylor*, the General Assembly has granted city councils the authority to annex and county commissioners the authority to incorporate territory. Because territory may not be both annexed to a city and incorporated into a new town, annexation and incorporation are considered the same "subject matter" for purposes of the first-in-time rule. *Brenwick Assocs., LLC*, 889 N.E.2d at 294.[14] This should not be confused with "subject matter jurisdiction," however. Also, as *Ensweiler* suggests, certain statutory or administrative requirements must be fulfilled when a governmental entity exercises its authority over the territory to be annexed or incorporated; compliance with those requirements is a procedural precedent to the valid exercise of such authority.[15]

---

[14] By contrast, the *Brenwick* court determined that "annexation and establishing economic development areas are not the same subject matter for purposes of the first-in-time rule." 889 N.E.2d at 294.

[15] As for whether such compliance must be strict or merely substantial, an Indiana Supreme Court opinion not cited by the parties indicates the former. *See City of Peru v. Bearss*, 55 Ind. 576, 581-82 (1877) ("[T]he entire proceedings for the annexation of contiguous territory to incorporated cities are statutory proceedings; and to make them operative and give them validity, it is essentially necessary that all the proceedings should be in strict conformity with the provisions and requirements of the statute."); *but see Ensweiler*, 169 Ind. App. at 646, 350 N.E.2d at 660 ("It is well established that minor errors or misdescriptions in a land description in an annexation ordinance, such as those occasioned by clerical or typographical error, may be disregarded where the boundaries are evident upon a fair and reasonable construction of the ordinance without resort to parol evidence.") (citing, inter alia, *Woerner v. City of Indianapolis*, 242 Ind. 253, 177 N.E.2d 34 (1961)).

17

For purposes of this case, then, the first-in-time rule may be restated as follows: when two governmental entities may possess "concurrent and complete" authority over a subject matter, the authority becomes exclusive in the one before which proceedings are first validly instituted, and that entity has a duty to retain its authority and "proceed to a final hearing and disposition." *Taylor*, 47 Ind. at 282. This is not to say that the second entity cannot attempt to exercise its own authority (perhaps because it believes that the first entity invalidly exercised its authority), only that it risks ending up on the losing side of a declaratory judgment action.

At oral argument, the Association conceded that a municipality institutes an annexation proceeding by adopting a written fiscal plan pursuant to Indiana Code Section 36-4-3-3.1 and that Sellersburg validly instituted the annexation proceeding in this case. After a municipality adopts a written fiscal plan, it must then provide notice of and hold a public hearing on the proposed annexation pursuant to Indiana Code Sections 36-4-3-2.1 and -2.2. The Association concedes that Sellersburg "eventually issued notices that complied with the statutory scheme and also held the required public hearing," but argues that this was "not until well after the incorporation had already been initiated" and thus the annexation was invalid. Appellant's Br. at 27.

We can think of no compelling reason to invalidate Sellersburg's annexation, given that it publicly acknowledged and then successfully cured a procedural defect.[16] To the

---

[16] In light of *K.S.* and *Robert Lynn Co.*, the Association's characterization of the defect as "jurisdictional" is inaccurate.

extent the Association argues that Sellersburg took an unreasonably long time to complete the annexation, we disagree. We reiterate that the legislature has required that a hearing on a proposed annexation be held *at least* sixty days *after* notice has been sent and has chosen not to establish a deadline for holding a hearing. After Sellersburg cancelled the August 2008 public hearing because of lack of proper notice, it hired a title company to compile a proper mailing list and spent several months negotiating with the Association regarding inducements for the annexation.[17] Those negotiations apparently reached an impasse by August 2009, when the Landowners initiated the incorporation proceeding. Sellersburg updated its fiscal plan in September, held a properly noticed public hearing in November, and adopted the annexation ordinance in December. We cannot conclude that this was an unreasonable delay on Sellerburg's part.

We are likewise unpersuaded by the Association's argument that the annexation is invalid because Sellersburg allegedly failed to cancel the August 2008 public hearing in accordance with Indiana's Open Door Law. The Association cites no specific provision of the Open Door Law regarding cancellations, and, in any event, we fail to see how the spirit of the Open Door Law was violated (or how the Landowners' substantial rights were violated) by Sellersburg's failure to notify the public that no official action would be taken. *Cf. City of Gary v. McCrady*, 851 N.E.2d 359, 366 (Ind. Ct. App. 2006) ("The purpose of the Open

---

[17] The record establishes that Council member Rhodes and Association member Gupton corresponded via email regarding the proposed annexation from at least May 31 through July 21, 2009, and the May 31 email indicates that additional discussions had occurred prior to that date. Appellant's App. at 284-98.

19

Door Law is to ensure that the business of the State of Indiana and its political subdivisions be conducted openly so that the general public may be fully informed.").

Based on the foregoing, we conclude that Sellersburg validly instituted the annexation proceeding in June 2008 and never lost its exclusive authority over the subject matter. As such, the annexation proceeding was first in time, and therefore we affirm the summary judgment ruling in favor of Sellersburg.

## II. *Remonstrance Action*

A remonstrance must be signed by at least 65% "of the owners of land in the annexed territory," and "[o]n receipt of the remonstrance, the court shall determine whether the remonstrance has the necessary signatures." Ind. Code § 36-4-3-11. As stated above, the disputed territory contains 775 parcels, and the owners of 632 of those parcels (nearly 82%) signed the remonstrance. In its motion to dismiss, Sellersburg asserted that the 496 Landowners in Covered Bridge and Willows of Covered Bridge who had signed the remonstrance were bound by "waiver of remonstrance agreement[s]" that were executed by the subdivisions' developers "as a condition for connection to [Sellersburg's] sewer system" and recorded as part of the subdivisions' restrictions and protective covenants in the county recorder's office in 1993 and 2000, and thus far fewer than 65% of the signatures were valid. Appellant's App. at 977. The trial court in the Remonstrance Action agreed with Sellersburg's assertion and dismissed the remonstrance.

Our supreme court has said that "an owner of land may not validly waive his right to remonstrate against future annexations, unless expressly authorized to do so by statute."

20

*Doan v. City of Fort Wayne*, 253 Ind. 131, 137, 252 N.E.2d 415, 418 (1969). The

Association contends that Indiana Code Section 36-9-22-2 controls here. That statute reads

in pertinent part as follows:

> (b) The works board of a municipality may contract with owners of real property for the construction of sewage works within the municipality or within four (4) miles outside its corporate boundaries in order to provide service for the area in which the real property of the owners is located. The contract must provide, for a period of not to exceed fifteen (15) years, for the payment to the owners and their assigns by any owner of real property who:

> > (1) did not contribute to the original cost of the sewage works; and

> > (2) subsequently taps into, uses, or deposits sewage or storm waters in the sewage works or any lateral sewers connected to them;

> of a fair pro rata share of the cost of the construction of the sewage works, subject to the rules of the board and notwithstanding any other law relating to the functions of local governmental entities. However, the contract does not apply to any owner of real property who is not a party to it unless it has been recorded in the office of the recorder of the county in which the real property of the owner is located before the owner taps into or connects to the sewers and facilities. The board may provide that the fair pro rata share of the cost of construction includes interest at a rate not exceeding the amount of interest allowed on judgments, and the interest shall be computed from the date the sewage works are approved until the date payment is made to the municipality.

> (c) The contract must include, as part of the consideration running to the municipality, the release of the right of the parties to the contract and their successors in title to remonstrate against pending or future annexations by the municipality of the area served by the sewage works. Any person tapping into or connecting to the sewage works contracted for is considered to waive his rights to remonstrate against the annexation of the area served by the sewage works.

Ind. Code § 36-9-22-2.

In analyzing an earlier but substantially similar version of this statute, another panel of

this Court said,

In our opinion, it is clear that unless he is a party to the contract to provide sewer service, a landowner's right to remonstrate against annexation cannot be validly waived unless the contract purporting to waive that right is duly recorded. The reasons for the requirement of recordation are obvious. An owner not privy to the contract for sewer services generally has no actual notice of the remonstrance waiver contained therein. This is particularly true of one who becomes an owner after execution of the contract. Thus, the purpose of recordation is to charge the subsequent landowners with constructive notice of the waiver of the right to remonstrate. It is apparent therefore that unless the contract for sewer services is recorded in such a manner as to impart constructive notice to subsequent landowners or to landowners not a party to the contract, the spirit of the statute and the reasons for requiring recordation of the contract are violated. Unless charged with constructive notice or with actual notice of the waiver of the right to remonstrate, a subsequent landowner cannot be deemed to have released or waived that right.

*Residents of Green Springs Valley Subdiv. v. Town of Newburgh*, 168 Ind. App. 621, 628-29, 344 N.E.2d 312, 316 (1976).

The Association says that Indiana Code Section 36-9-22-2 is "clear and unambiguous" and that "there is no dispute that Sellersburg was unable to produce a copy of any sewer contract between it and the developers of Covered Bridge and Willows of Covered Bridge, let alone one that was recorded. In short, there is no direct evidence that such a written agreement exists." Appellant's Br. at 41, 42. Although it is true that Sellersburg was unable to produce a written contract, it did produce evidence indicating that the remonstrance waiver provisions in the subdivisions' restrictions and covenants were inserted at Sellersburg's insistence in exchange for allowing the developers to connect to its sewer system and that the waiver provisions were recorded within the Landowners' chain of title.

The trial court's ruling in the Remonstrance Action reads in pertinent part as follows:

22

The Court heard testimony that agreements were made between [Sellersburg] and the developers of both Covered Bridge and Willows and that those agreements were voted on by the town board. The essence of the agreement was that there would be no annexation for 10 years, the developers would pay for the extension of sewer lines, and owners would waive the right to remonstrate. The town maintains the lines and provides sewer service to Covered Bridge and Willows.

[Sellersburg's] minutes of various meetings refer to the agreement between the town and the developers. The Court finds that the minutes taken together with the recorded restrictions and covenants and testimony received by the court sufficiently memorialize the agreement or contract. The minutes of January 25, 1993, September 27, 1993, and October 11, 1993 discuss and refer to the agreement with the developers and specifically to not opposing or protesting annexation.[18] In addition, the minutes refer to the agreement in the past tense, namely:

> "the agreement was that there would be something put in place to cover if the town ever annexed that area, that there would be something stating that the town could". See September 27, 1993 minutes.

---

[18] The October 11, 1993 minutes contain the following letter that was prepared for the Council president's signature regarding Sellersburg's conditions for allowing Covered Bridge to connect to its sewer system:

Gentlemen:

Concerning connection of your subdivision to the sanitary sewer system of the Town of Sellersburg. We are going to need the following items to complete this transaction to allow the flow of waste water.

1. Sufficient language on the recorded plat to bind, legally, those who purchase lots stating []that they will not fight annexation when the Town of Sellersburg decides to do so, sometime in the future.

2. A legal document binding the owners of the Golf Course complex, and their successors and assigns to the same agreement.

3. A copy of the subdivision plat and construction plans and specifications.

….

Sincerely, Town Council, Stanley E. Tucker, President

Appellant's App. at 1060.

Several references are included in the minutes concerning binding future owners. Based on the testimony provided at the hearing in this case, the minutes of [Sellersburg], and the recorded restrictions and covenants, the court concludes there was an agreement between the town and the developers regarding the provision of sewer service in exchange for a waiver of the right to remonstrate against annexation. The court concludes the waiver provision was recorded and all purchasers were put on notice with respect to the waiver provision. Covered Bridge restrictions were recorded on May 24, 1993 and Willows was recorded on October 18, 2000.

Appellant's App. at 14-15.[19]

Sellersburg contends that the remonstrance waiver provisions are "plain and unambiguous" and that the intent of the developers is clear: "to waive the present and future right to remonstrate against annexation by [Sellersburg] for all lot owners who accept a deed to any lot in the development in exchange for sanitary sewer connection." Appellee's Br. at 20. Sellersburg further contends that the Association has "presented no evidence that any of the 496 property owners in Covered Bridge and the Willows of Covered Bridge who signed the remonstrance petition purchased their property prior to the developer[s] recording the restrictions and protective covenants" or that the "restrictions and protective covenants do not

---

[19] The remonstrance waiver provisions for Covered Bridge and Willows of Covered Bridge are nearly identical. The Covered Bridge provision reads as follows:

24. CONNECTION TO SANITARY SEWER; WAIVER OF REMONSTRANCE.

In order to provide sanitary sewers to Covered Bridge Development, Developer, its successors and/or assigns, including all lot owners in the Development known as Covered Bridge Subdivision (Estate Homes), by acceptance of a deed to any lot, lots or parcels of real estate in Covered Bridge Subdivision (Estate Homes), waive all rights, both present and future, to remonstrate to any future annexation by the Town of Sellersburg.

Appellant's App. at 98.

24

appear in their respective chain of title. Therefore the property owners of Covered Bridge and the Willows, had at least constructive notice sufficient for the enforceability of the waiver and remonstrance provision." *Id.* at 21, 23.

The Association does not specifically refute either the trial court's findings or Sellersburg's assertions, but instead emphasizes the absence of a written agreement and contends that "there is no way of knowing whether [the contracts between Sellersburg and the developers] were ever actually executed or whether they contained an expiration date, a provision stating they were void unless recorded, or some other provision that would void the contract." Appellant's Reply Br. at 22. We see no reason to speculate on such remote possibilities here. The evidence mentioned in the trial court's ruling is sufficient for us to conclude that Indiana Code Section 36-9-22-2 was substantially complied with. Sellersburg agreed to allow the developers to connect to its sewer system in exchange for releasing their right "and their successors in title to remonstrate against pending or future annexations by the municipality of the area served by the sewage works." Ind. Code § 36-9-22-2(c). Although the agreements between Sellersburg and the developers were not recorded, the remonstrance waiver provisions were memorialized in the subdivisions' restrictions and protective covenants, which were "recorded in the office of the recorder of the county in which the real property" is located before the Landowners "tap[ped] or connect[ed] to the sewers and facilities." Ind. Code § 36-9-22-2(b). As such, the Landowners had constructive notice of the remonstrance waiver provisions before they purchased their property and consequently are bound by those provisions. *See Lewis v. Bd. of Trs. of Charles A. Beard Mem'l Sch.*

25

*Corp.*, 657 N.E.2d 180, 183 (Ind. Ct. App. 1995) ("Substantial compliance with a statutory mandate is sufficient if the act of compliance accomplishes the essential purpose of the statute."), *trans. denied* (1996). Thus, the remonstrance lacks sufficient valid signatures, and therefore we affirm the dismissal of the Remonstrance Action.

Affirmed.

FRIEDLANDER, J., and BROWN, J., concur.